## STEGNER v. MODERN BROTHERHOOD OF AMERICA.

Where no question was raised touching the qualifications of a witness to testify as a medical expert, the objection going solely to the witness' knowledge of the condition of the deceased at the time of death, and where, before the questions were asked and as a foundation for them, the witness was fully examined as to his opportnuity for observing the condition of deceased, the foundation laid was sufficient to permit the witness to give his opinion whether deceased's death was caused directly or indirectly by reason of pregnancy or by anything growing out of or connected therewith.

In an action by the beneficiary on a certificate of membership in an assessment benefit insurance corporation to which was attached a special pregnancy waiver which provided that the company would not be liable should the insured die by reason, directly or indirectly, of her pregnancy, and, if she died within a year, the burden of proof was to be upon the beneficiaries to show that death was not caused by pregnancy, or anything growing out of or connected therewith, where the insured died 10 days after giving birth to a child, it was not error to refuse to charge that the presumption was raised by reason of the death of insured that she died from some ailment connected with her condition, and that plaintiff must prove by a preponderance of the evidence that she died from some cause entirely disconnected with her condition, since the parties did not by their contract undertake to create a presumption of fact.   They only attempted to place the burden of proof upon the beneficiary.

Where both parties went to trial upon the assumption that the burden of proof rested upon plaintiff to show that the death of deceased was not caused directly or indirectly by pregnancy, or anything growing out of it or connected therewith, and it was shown by evidence for plaintiff that the immediate cause of her death was

acute dilatation of the heart resulting from over-exertion too soon after childbirth, a verdict should have been directed for defendant.

(Opinion filed, Dec. 1, 1909|)

Appeal from Circuit Court, Minnehaha County. Hon. JOSEPH W. JONES, Judge.

Action by George A. Stegner against the Modern Brotherhood of America, a corporation. Judgment for plaintiff, and defendant appeals. Reversed.

*C. G. Sherwood, O. H. Ames,* and *Aikens & Judge,* for appellant. *Orr & Rodabaugh,* for respondent.

SMITH, J. The defendant and appellant is an assessment benefit or insurance corporation organized under the laws of the state of Iowa, and having its principal place of business at Mason City, in said state. On the 26th day of December, 1904, said corporation executed and delivered to one Hattie Stegner, wife of the plaintiff, its certificate of membership, naming the plaintiff, George A. Stegner, as beneficiary, and thereby insuring the life of Hattie Stegner in the amount of one full assessment of all members in good standing, but not in any event to exceed the sum of $500. On the 23d day of February, 1905, the said Hattie Stegner duly executed and delivered to the defendant corporation a special pregnacy waiver to be attached to the certificate of membership, as follows: "Whereas I am at this time pregnant, therefore in consideration of my said condition, I hereby agree for myself and my beneficiaries that said Modern Brotherhood of America shall not be liable under the certificate it issued to me upon said application, should I die or receive any acute injury by reason, directly or indirectly, of my said condition; and should I die within one year from date, it is expressly agreed for myself and my beneficiaries that the burden of proof shall be upon my beneficiaries to establish the fact that my death was not caused, directly or indirectly, by my said pregnancy or anything growing out of or connected therewith." On the 31st day of August, 1905, the said Hattie Stegner was delivered of a child, and on September 10th thereafter died. Due notice and proof of death were furnished defendant under the provisions of said certificate. Payment was refused, and the

beneficiary, George A. Stegner, brought an action in the circuit court of Minnehaha county to recover the amount of $500 alleged to be due under the terms of said certificate. The action was duly tried in the circuit court, and resulted in a verdict for plaintiff in the sum of $500, and on May 10, 1907, judgment was entered in favor of plaintiff, with $52.45 costs. A new trial was denied.

The defendant appeals from the judgment and the order overruling the motion for a new trial, and presents six assignments of error, which may all be considered under three propositions: First. Error in receiving certain evidence. Second. Refusal to give an instruction requested by the defendant. Third. Insufficiency of the evidence to sustain the verdict.

Charles F. Culver, called as a witness on behalf of the plaintiff, testified: "Am a physician and surgeon and regular graduate of the University of Minnesota, Medical Department. Graduated June, 1899. Have been practicing medicine ever since. * * * I knew Hattie W. Stegner in her lifetime, had probably known her about six months prior to her death. Could not say for sure, but about that time. I attended her as a physician. It would be impossible for me to give you the dates. She had been a patient of mine previous to this confinement. Could not tell just the dates. Could not tell very accurately how long before her confinement she had been my patient. Have been physician for the family for some time, and attended Hattie W. Stegner in childbirth. It was the last day of August, 1905. Was first called on that occasion, I think the February or March previous. * * * I was called along in the night, I think about midnight, on the 30th of August, and found she was just beginning to labor, stayed there the balance of the night, and left in the morning, was called back about noon, when delivery was finished. Her condition, when I first called, was normal in every way, so far as I could see. I made an examination. I examined the heart, pulse, temperature, and noticed the general physical condition, and made a general examination, and found her in every way in a normal condition. Child-birth took place somewhere about noon or a little later, August 31, 1905. The

placenta or afterbirth was delivered soon after, probably a half hour after. There was nothing abnormal or unnatural in the afterbirth or its delivery. There was no profuse bleeding or hemorrhage as the result of childbirth. Labor began on the evening of August 30th. I was called in somewhere about midnight, and it continued slow and general until the next morning. The advance had been slow and normal in every way. I left them and was called back about noon, as I remember it, when conditions had changed as intended, and she was delivered in due course of time. Delivery was in all respects normal. There was none of the complications or troubles that sometimes arise in childbirth. Her condition, subsequent to childbirth, was perfectly healthy as far as I could find out. Could not tell how often I saw Mrs. Stegner subsequent to the childbirth. It was a number of times. Nothing of particular importance came up, and I made no notes of it. Saw her first after the childbirth, the next morning. Her condition at that time was normal in every way, as far as I could find out. Saw her again three or four days or two or three days after that. * * * At this time I noted her pulse, took her temperature, and examined externally. Made an external examination of the abdomen, to see the condition of the womb, noticed the amount and character of the discharge, questioned her as to her general feeling, and noted her general appearance. She was recovering very nicely from the effects of childbirth. Did not observe any formation of blood clot or emboli. When such condition does develop in cases of this kind, it develops within three days from the day of birth, or follows it immediately. There was no emboli in this case in my opinion. There was no puerperal fever in this case. Her temperature was normal at the time. The last visit I made was three or four days prior to her death. At that time I made about the same examination as the one previous—found her normal in every way, as far as I could see. She had made a particularly good recovery from her childbirth. I am frequently called to attend in matters of childbirth in my practice, * * * since the 1st of July, working at the rate of about 25 or 30 a year. * * * I was present at the time of her death. That

was the 10th day of September, 1905. I found her lying on the bed; mucous membrane blue; skin white or marble; respiration irregular, short and gasping; eyes stary or open; facial, so called, anxious. No pulse at the wrists. Heart action as found over the area slow and very weak and feeble." The witness was then asked the following questions: "Q. You may state whether or not in your opinion and from your knowledge of the facts, and as the attending physician of Hattie W. Stegner, that the death of Hattie W. Stegner was caused and induced or brought about, directly or indirectly, by reason of pregnancy. (Objected to. Not sufficient proof of any examination or knowledge of her condition on the part of this witness which would qualify him to answer this question. Overruled. Exception.) Ans. No. Q. You may state whether or not, in your opinion from your knowledge of the facts and as Mrs. Stegner's physician, whether or not in your opinion the death of Hattie W. Stegner was caused by anything growing out of or connected with that pregnancy. (Objected to for the same reason given to the last hypothetical question. Overruled. Exception.) Ans. No." These rulings of the trial court are assigned as error. No question is raised touching the qualifications of the witness to testify as a medical expert, but the objection goes solely to the sufficiency of witness' examination and knowledge of the condition of the deceased at the time of her death. Before these questions were asked the witness, and as a foundation therefor, the witness had been fully examined as to his opportunity for observing the condition of the deceased, as hereinbefore stated. That the foundation thus laid was sufficient to permit the witness to give his opinion, as a medical expert, upon the matter referred to him in the questions, seems clear to us. Wigmore, in discussing the qualifications of witnesses, in the same paragraph (volume 1, p. 650), quoted by appellant's counsel, used this language: "But from the persons to whom the tribunal will listen the law will attempt to require some qualifications which will make them worth listening to. It will not presume to determine beforehand, which witness is correct—i. e., which one really knows—but it will ask that each one offered shall be one

prima facie likely to know; in short, shall have had an opportunity of observing what was or what happened, and shall have directed his attention or observation to the matter. This is as far as the law can go." L. N. A. & C. Ry. Co. v. Shires, 108 Ill. 627. In this action for damages for personal injuries, the court says: "It is next contended that the court erred in permitting Dr. Brown to answer the following question: 'What in your opinion and knowledge of Mr. Ostrander's previous health and condition has caused his present illness or disorder as described by you?' The witness answered: 'My opinion is it results from the injury in November last.' The objection to the answer, as we understand the argument, is that the witness was not shown to have had any knowledge of plaintiff's previous condition upon which to base an opinion. The witness, as disclosed by his evidence, was a physician and surgeon. He was called to examine the plaintiff on the morning he was injured. He had not before the injury made an examination of the plaintiff, but he had met him almost daily before the accident in going to and from his work. If the witness had met the plaintiff almost daily, for a number of years, and was well acquainted with him as is disclosed by his evidence, and was called upon to treat him when he was injured, we think he had sufficient knowledge upon which to base an intelligent opinion as to the cause of his then illness." See, also, Ebos v. State, 34 Ark. 522.

Appellant assigns as error the refusal of the court to give the following instruction: "You are further instructed that the presumption was raised by reason of Mrs. Stegner's death that she died from some ailment connected with her condition of pregnancy, and that, before plaintiff can recover, he must satisfy you by a preponderance of the evidence here produced that she died from some cause entirely disconnected with such condition. If he has failed to do so, your verdict must be for the defendant." How far parties to contracts may bind the courts by direct stipulations as to the burden of proof in any given state of facts we need not determine at this time. The proposed instruction goes beyond the language of the pregnancy waiver, which only attempts to provide "that the burden of proof shall be upon my

beneficiaries to establish the fact that my death was not caused, directly or indirectly, by my said pregnancy or anything growing out of or connected therewith," and asks the court to inform the jury that a presumption of facts exists by reason of her death within one year from the date of the waiver that "she died from some ailment connected with her pregnancy." These parties by their contract did not undertake to create any presumption of fact. They merely attempted to place the burden of proof upon the beneficiary. Whether parties may bind the courts by stipulations bearing directly upon questions of burden of proof or the evidentiary force of particular facts we do not determine. The instructions given by the court were in every way favorable to the defendant, and fully covered the rights of defendant under the provisions of the waiver clause above referred to. These instructions were as follows: "If you believe from the evidence here produced that Mrs. Stegner arose from her bed after childbirth too soon, or, after having arisen she overtaxed herself and such arising or overexertion contributed to her death, then your verdict must be for the defendant. It is not incumbent upon the defendant to prove what was the cause of Mrs. Stegner's death or to prove that her death was connected in some way with her confinement, but the burden of proof rests upon the plaintiff to prove by the evidence that she died from some cause entirely disconnected with such condition. If he has failed to do so, your verdict must be for the defendant."

The third assignment of error, as to the insufficiency of the evidence based upon appellant's motion to direct a verdict at the close of all the evidence, presents a much more serious question. The parties, both plaintiff and defendant, tried this action in the court below upon the theory and assumption and have presented the same to this court upon this appeal upon the same assumption that the burden of proof rests upon respondent as a condition of recovery in this action to show that the death of Hattie Stegner "was not caused, directly or indirectly by pregnancy or anything growing out of it or connected therewith." This assumption by both parties as to the burden of proof makes it necessary and proper for this court to con-

sider the question of the sufficiency of the evidence upon the theory that the burden of proof rests upon the plaintiff. The evidence shows conclusively that Mrs. Stegner at the date of her certificate of membership and of the signing of the waiver clause, and throughout her pregnancy up to the childbirth, was in perfect physical condition; that she was not, and had not been at any time, subject to any disease nor to any danger or trouble whatever, except such as might be connected with pregnancy or would naturally grow out of or be attendant upon childbirth. She was of medium size, of normal weight, and muscular and strong, but not fleshy. She appeared to be in the most perfectly healthy and normal condition up to the time of and throughout childbirth, and so continued up to about the hour of 10:30 o'clock, September 10, the day of her death. Nothing had happened which was not of the most favorable character, and she seemed in excellent spirits. About 8:30 o'clock that morning she got up, and, sitting on the side of the bed, dressed herself after her husband had laid her clothes upon the bed. When dressed, she walked to the kitchen, a distance of about 30 feet, her husband holding her by the arm, then back into the dining room, sat down with the family, and ate breakfast, remaining there about three quarters of an hour, visiting with the family and seemed in the best of spirits. Then got up, and, her husband holding her arm, walked to the parlor and sat down in a rocking chair, remained sitting for a few minutes, and again got up, and walked to the music rack about six feet distant, and returned to her chair. It was then about 10:15 o'clock, something like two hours after she had arisen from her bed, and she was apparently still in good spirits and health. Suddenly she threw herself back in her chair, had trouble to breathe, became unconscious, but was revived by the use of water, and was carried back and laid on her bed by the husband. The trouble with her breathing continued. The physician, Dr. Culver, was hastily summoned, but Mrs. Stegner died in from 15 to 20 minutes after the first symptoms of trouble appeared. On the trial, Dr. Culver, being called as a witness for plaintiff, testified that in his opinion Mrs. Stegner's death was not caused and induced

or brought about, directly or indirectly, by reason of pregnancy nor anything growing out of or connected with that pregnancy. Plaintiff also offered in evidence the proofs of death furnished defendant by the beneficiary, appended to which was the sworn certificate of Dr. Culver as attending physician, in which the following questions and answers appeared: "Q. Of what disease did she die? A. Acute dilatation of the heart, caused by overexering 10 days following confinement. Q. What were the general symptoms present during the progress of the disease? A. Very sudden heart failure. Q. Was the final illness complicated with or preceded by other disease? A. None except weakness or blood clot following labor." Dr. Culver, when on the stand as a witness for plaintiff, being asked on cross-examination what he meant by his answer to the last question above, said: "I know of no other possible reason, or you might say that was one of the possibilities that came into my mind, the first time." He was also asked what he meant by weakness in the same answer, and replied: "Possible muscular weakness from lying still so long. Q. That would be the result of childbirth? A. Following. Q. She would lie still because of childbirth? A. Certainly. Q. There was nothing else the matter with her? A. No, sir. Q. When you said in answer to this question, 'Was the final illness complicated with or preceded by other disease?' and you answered, 'None except weakness or blood clot,' you meant by that to say it was the weakness which was occasioned by her being forced to lie in bed on account of the birth of the child?' Is not that true? A. Yes, sir. Q. Is it the fact that dilatation is caused by overexertion? A. It is. Q. You meant that she overexerted herself right after confinement? A. At that time; yes, sir. Q. What was the cause of Hattie W. Stegner's death in your opinion? A. To the best of my knowledge, it was acute dilatation of the heart. Q. And your opinion is it was caused by overexertion? A. No other reason that I know of. Q. The fact is the woman exerted herself too soon after the birth of her child? A. Not necessarily too soon. Q. It turned out to be too soon, did it not? A. Yes; in this case. Q. It killed her, didn't it? A. It did." From this and other evidence in the record

it conclusively appears that the weaknened condition of Mrs. Stegner was due to childbirth and its necessary after effects, and that overexertion in her weakened condition resulted in acute dilatation of the heart, which was the immediate cause of her death. The waiver clause in effect exempted the defendant from liability in case her death was caused directly or indirectly by reason of her pregnancy or "of anything growing out of or connected therewith." That the immediate cause of her death, acute dilatation of the heart resulting from overexertion too soon after childbirth, "grew out of and was connected with" the pregnancy and its natural and necessary results and conditions, seems too clear to admit of doubt under all the evidence. No other possible inference could be drawn from the evidence. There is "no reasonable chance for fair-minded men to draw different conclusions. * * * and there can be but one conclusion." The testimony quoted above is that presented by the plaintiff on the trial and upon which he must rely to sustain a verdict, and concerning it he cannot affirm that there exists any controversy. In McKeever v. Homestake Mining Co., 10 S. D. 602, 74 N. W. 1053, this court said: "It is the settled law of this state that when the evidence given at the trial with all inferences that the jury could justifiably draw from it, is insufficient to support a verdict for the plaintiff so that such a verdict, if returned, must be set aside, the court is not bound to submit the case to the jury but may direct a verdict for the defendant." In Peet v. Dakota Fire & Marine Insurance Co., 1 S. D. 466, 47 N. W. 533, this court laid down the rule as follows: "If the proof of a fact is so preponderating that a verdict against it would be set aside by the court as contrary to evidence, then it is the duty of the court to direct a verdict. * * * Formerly it was held that, if there was what was called a scintilla of evidence in support of a case, the judge was bound to leave it to the jury; but recent decisions of high authority have established a more reasonable rule, that in every case, before the evidence is left to the jury, there is a preliminary question for the judge not whether there is literally no evidence, but whether there is any upon which a jury can properly proceed to find a verdict for the

party producing it upon whom the onus of proof rests." These decisions are in accord with the doctrine established by the great weight of authority, and have been repeatedly affirmed by this court.

Defendant's motion to direct a verdict should have been sustained. The judgment and order overruling the motion for a new trial are reversed.