JAMES H. STUART, Appellant, *v.* MUTUAL RESERVE FUND LIFE
ASSOCIATION, Respondent.

*Life insurance policy — the sense in which language is used, when a question for the
jury — question in an application for insurance — waiver of a defense.*

When the sense in which language is used by the parties in an application for a
policy of life insurance is in doubt, its proper meaning may present a mixed
question of law and fact, the decision of which must be left to the jury.

An application for a policy of life insurance contained the following question:
"Has any physician given an unfavorable opinion upon the life of the appli-
. cant with reference to life insurance or otherwise?"

*Held,* that such question was not equivocal or ambiguous, and did not call for an
opinion as to the manner of living, or the then condition of health of the appli-
cant, further than as those elements might affect the risk of insurance upon the
individual, and a false answer thereto rendered the insurance policy void.

After the death of a person to whom a policy of life insurance had been issued,
proofs of death were furnished to the insurance company, and the latter advised
the administrator that upon the facts as they then appeared the proofs were
approved and the claim would be paid on a specified date. A mortuary call
was made by the insurer assessing its members for approved claims, among
which was the claim upon the life insurance policy of such decedent, and the
money was collected, but the corporation did not pay the amount of the policy
in accordance with its notice, and thereafter notified the administrator of such
decedent of its revocation of the approval of the claim, and declined to pay it.
An action was thereafter commenced to recover the amount of such policy.

*Held,* that a defense to the action brought on the policy, based upon facts
unknown to the insurer at the time of such notice and assessment, had not been
waived by it.

APPEAL by the plaintiff, James H. Stuart, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Kings on the 22d day of January, 1892, upon the verdict of a jury directed by the court after a trial at the Kings County Circuit, and also from an order entered in said clerk's office on the 23d day of February, 1892, denying the plaintiff's motion for a new trial made upon the minutes.

*Alfred R. Page,* for the appellant.

*F. A. Burnham* and *William C. De Witt,* for the respondent.

BROWN, P. J.:

This action was brought by the plaintiff as assignee of William R. Page, administrator of John B. Page, deceased, upon two certificates or policies of life insurance, dated September 25, 1885, issued by the defendant upon the life of said John B. Page, and payable to his legal representatives within ninety days after receipt of satisfactory proofs of death.

A verdict was directed for the defendant upon the ground that the answers made by the insured in his application to the two following questions were untrue :

"*First.* Q. Has any proposal to insure the life of the applicant ever been declined ? If so, by what company or association ? *Second.* Q. Has any physician given an unfavorable opinion upon the life of the applicant with reference to life insurance or otherwise ? "

To both questions the answer returned was " No."

Mr. Page died on October twenty-fourth following the issuing of the policies. Proofs of death were furnished on December sixteenth, and on May 10, 1886, the defendant advised the administrator of Mr. Page that as the facts then appeared the proofs were approved, and the claim would be paid on July thirtieth.

On June first a mortuary call was made by the defendant assessing its members for approved claims, among which was the one in suit, and the money was collected. The defendant did not pay in accordance with its notice of May tenth, and in March, 1887, it notified the administrator of its revocation of approval of the claim, and declined to pay it. This action was commenced on September 28, 1888.

The appellant contends that by its approval of the proofs and promise to pay the claim, and collection of the money by assessment upon its members, the defendant waived any right to declare the policy void for breach of its conditions, and cites *Smith* v. *Glens Falls Ins. Co.* (62 N. Y. 85) to sustain this contention.

That case is not applicable to the present controversy. It was a case of fire insurance, where, in consideration of the surrender and cancellation of the policy, the defendant agreed to pay a specified sum in settlement of the loss. The policy was surrendered, and after that the defendant refused to pay, and pleaded a breach of warranty in an action brought to recover the sum agreed to be paid.

The court held that the defense of a breach of condition of the policy did not survive its surrender and cancellation, and that the action was not on the policy, but on the new agreement, and that the defendant must pay.

A similar ruling was made in *Nat. Life Ins. Co.* v. *Minch* (53 N. Y. 144–151).

The present case has in it no element of settlement. The defendant never promised to pay absolutely. The statement of the letter of May tenth was that on the evidence then with the association, and as the facts then appeared, it would pay on July thirtieth.

At the time of writing that letter it did not know of the facts now asserted as a defense, and consequently, then, could not waive a defense based upon them. (*Robertson* v. *Metropolitan Life Ins. Co.,* 88 N. Y. 541.)

Neither is the fact that the money to pay the claim was collected by assessment upon the members of the association available to the plaintiff, nor does it affect the right of the defendant to reject the claim upon evidence subsequently obtained. Such, I think, would be the duty the officers owed to the association, if they were satisfied from their examination that there was a breach of the contract. (*Fisher* v. *Andrews,* 37 Hun, 176; *Mayer* v. *Equitable Reserve Fund Life Association,* 42 id. 237.)

We, therefore, reach the inquiry whether the court properly determined that the answers to the questions I have quoted were untrue.

The evidence on the subject was not in dispute. The question is, did it compel the conclusions drawn from it?

It appears that Mr. Page had a tontine policy in the Equitable Life Assurance Society. That policy provided that the tontine dividend should be applied only to purchase an annuity to reduce premiums during the subsequent continuation of the policy. The tontine period had expired in November, 1884. The association had, however, made an offer to the holders of such policies, including Mr. Page, in addition to the provision I have quoted from the contract, that the tontine dividend might be applied to the purchase of additional insurance equal in value to the annuity provided in the contract. But the offer was subject to the condition that the person accepting it should pass a satisfactory medical examination as to the insurable character of his life.

On the day preceding the application for the policies in suit Mr. Page called upon the Equitable Association and saw Mr. Van Cise, the assistant actuary. The additional insurance to which he would have been entitled to was $4,100, and he expressed a desire to accept the offer made to him.

He was sent by Mr. Van Cise to the medical department to be examined for that insurance. He was examined by Dr. William S. Seaman, a medical examiner of the company. The result of that examination was that albumen was found in his urine, and Dr. Seaman refused to approve the application, and communicated that conclusion to Mr. Van Cise.

Mr. Van Cise testified : " I saw Mr. Page again on that same day after I had sent him or took him to the medical department. * * * I told him that our doctor had refused to pass him for the increased amount of insurance. * * * I told him that the doctor would not approve him. * * * In the conversation I had with Mr. Page it was stated that the doctor refused to approve him on account of the condition of 'his health. * * * I think he asked why the doctor refused to approve him ; * * * what was the matter with him. My recollection would be that I evaded the answer."

It further appears by the testimony of Dr. Gale, who was Mr. Page's physician at his home in Vermont, that on his return from New York in September, 1885, at Page's request, he made an examination of his urine. And that Page then told him of his application to the Equitable Association for additional insurance,

and that he had submitted to an examination, and an unfavorable opinion had been passed upon him, and he wanted Dr. Gale to examine his urine and see if there was any trouble.

The appellant claims that as no formal proposal for insurance was made by Mr. Page to the Equitable Association, but the offer made to the policyholders was in the nature of a settlement of their tontine dividend, this evidence does not establish that the negative answer given to the first question was false. But, passing this, I think it permits no other conclusion than the untruthfulness of the answer to the second question.

That inquiry was not limited to an opinion given upon an application for insurance.

The information called for was whether in " reference to insurance or otherwise" an unfavorable opinion had been given as to the applicant's life.

The criticism made upon the form of this question is not, I think, well founded. I do not consider it equivocal or ambiguous. It does not call for an opinion as to the manner of living or the present condition of health of the applicant, further than as those elements might affect the risk of insurance upon the individual.

The life is referred to as the subject of insurance, just as in fire or marine insurance a building or vessel would be referred to, and the inquiry is whether an opinion had ever been given that was unfavorable to the life considered as an insurable thing.

Undoubtedly, when the sense in which language is used or intended to be understood by parties is in doubt, its proper meaning may present a mixed question of law and fact, which must be left to a jury to determine; but I do not think this is such a case.

The question was plain and intelligible, and the insured must be held to have known that Dr. Seaman had given to Mr. Van Cise an opinion that was unfavorable to his life as an insurable risk. His answer was, therefore, properly held by the trial court to have been untrue.

The answer to this and other questions was by the terms of the policy warranted to be true and made a part of the contract.

Its untruthfulness, therefore, avoided the contract. (*Foot* v. *Ætna Life Ins. Co.*, 61 N. Y. 571; *Edington* v. *Ætna Life Ins. Co.*, 77 id. 564.)

The respondent has called our attention to alleged breaches of other conditions, and to the clause in the contract providing that no suit shall be brought after the lapse of one year from the date of the death of the insured.

I am of the opinion that the evidence permitted the conclusion that the breach of the condition as to other insurance, and as to the time of the commencement of an action to recover upon the policies was waived by the defendant, but whether the question was one to be determined by the court or jury it is unnecessary to decide; nor, inasmuch as we think the judgment must be affirmed, is it necessary to state the reason that leads to that conclusion.

The judgment must be affirmed, with costs.

PRATT and DYKMAN, JJ., concurred.

Judgment affirmed, with costs.