MRS. DELLA VAN WOERT, Surviving Widow, and Legal Heir of Jiles J. Van Woert, and William Van Woert, Guardian of Ella Van Woert, Joseph Earl Van Woert, Ralph Leighton Van Woert, and Fairy Van Woert, Minor Heirs of Said Deceased, v. MODERN WOODMEN OF AMERICA, a Foreign Corporation.

(151 N. W. 224.)

**Directed verdict — motion for — both parties — deemed to have consented to discharge of jury — consent to trial by court.**

1. When both plaintiff and defendant move for a directed verdict at the close of the testimony, they will be deemed to have consented to a discharge of the jury and a trial by the court.

**Legislative policy — wisdom of — not a question for the court.**

2. The question of the wisdom of a legislative policy is a matter for the legislature, and not for the court.

**Insurance — contract for — false warranty — fact material to risk.**

3. Section 6501, Compiled Laws 1913, does not change the effect of a false warranty in a contract of insurance as to a fact material to the risk assumed. Satterlee v. Modern Brotherhood, 15 N. D. 92, followed.

**Application for insurance — untrue statements in — physician — had not consulted — is a material representation — policy vitiated by — intention to deceive immaterial.**

4. An untrue statement by the insured in his application that he had not, within the seven years last preceding the date of such application been treated

by or consulted any physician or physicians in regard to personal ailment, which statement was made as a warranty, is under the undisputed facts in this case, a material representation, which vitiated the policy, even though such misrepresentation was not made with intent to deceive.

**False statements — application for life insurance — provision in policy — policy void if made — acceptance of last assessment — not a waiver of such provision.**

5. Acceptance of the last assessment and proofs of death of the insured is not a waiver of a provision in the policy that it should be void if statements in the application, constituting warranties, were false, where the falsity was not known at the time the assessment was paid and the proofs of death approved.

Opinion filed February 6, 1915.

From a judgment of the District Court of Renville County, *Leighton,* J., plaintiffs appeal.

Judgment affirmed.

*Grace & Bryans,* for appellant.

The defendant, being engaged in the insurance business in this state as an insurance company, is subject to the general insurance laws of the state, and is not exempt. Rev. Codes 1905, §§ 5893, 5934; Comp. Laws, 1913, 6501.

Under such statute it has been held that, if the application contains untrue statements, the burden of proof is upon the defendant to show that they were made in bad faith, fraudulently, and with the intention to deceive the insurance company. Soules v. Brotherhood of American Yeoman, 19 N. D. 23, 120 N. W. 760; Jacobs v. Omaha Life Asso. 146 Mo. 523, 48 S. W. 462.

The benefit certificate issued by such fraternal organization doing a life insurance business stands in the place of the *policy* issued by regular insurance companies, and the distinction sought to be made is without a difference. Both are *insurance contracts.* 29 Cyc. 8; Penn Mut. L. Ins. Co. v. Mechanics' Sav. Bank & T. Co. 38 L.R.A. 33, 19 C. C. A. 286, 37 U. S. App. 692, 72 Fed. 413; Fogg v. Supreme Lodge, U. O. G. L. 156 Mass. 431; Supreme Counsel, A. L. H. v. Larmour, 81 Tex. 71, 16 S. W. 633; Bolton v. Bolton, 73 Me. 299; Brown v. Balfour, 46 Minn. 68, 12 L.R.A. 373, 48 N. W. 604; Rockhold

· v. Canton Masonic Mut. Ben. Soc. 129 Ill. 440, 21 N. E. 794; Martin v. Stubbings, 126 Ill. 387, 9 Am. St. Rep. 620, 18 N. E. 657.

The fraternal character of the organization is merely incidental thereto. It is a *life insurance company* just the same. State v. Bankers' & M. Mut. Ben. Asso. 23 Kan. 499; Folmer's Appeal, 87 Pa. 133; Illinois Masons' Benev. Soc. v. Winthrop, 85 Ill. 537; Illinois Masons' Benev. Soc. v. Baldwin, 86 Ill. 479; State ex rel. Beach v. Citizens' Ben. Asso. 6 Mo. App. 163; Bolton v. Bolton, 73 Me. 299; Bacon, Ben. Soc. chap. 51.

Under modern decisions, it is the tendency of the courts to hold that the untrue statements are but the opinion of the insured, and that they do not constitute *warranties,* unless made in both faith and with intent to deceive; that the burden is upon the company to prove such bad faith and wrong intention. Lakka v. Modern Brotherhood, — Iowa, —, 49 L.R.A.(N.S.) 902, 143 N. W. 513; Supreme Ruling, F. M. C. v. Crawford, 32 Tex. Civ. App. 603, 75 S. W. 844.

A clause in a policy that insured agrees to warrant the truthfulness of his answers to questions amounts to no more than to warrant that such answers were bona fide. Hough v. City F. Ins. Co. 29 Conn. 10, 76 Am. Dec. 581; Illinois Masons' Ben. Soc. v. Winthrop, 85 Ill. 537; Conver v. Phœnix Mut. L. Ins. Co. 3 Dill. 226, Fed. Cas. No. 3,143; Goucher v. Northwestern Traveling Men's Asso. 20 Fed. 598; Connecticut Mut. L. Ins. Co. v. Union Trust Co. 112 U. S. 250, 28 L. ed. 708, 5 Sup. Ct. Rep. 119; Phœnix Mut. L. Ins. Co. v. Raddin, 120 U. S. 183, 30 L. ed. 644, 7 Sup. Ct. Rep. 500; Moulor v. American L. Ins. Co. 111 U. S. 341, 28 L. ed. 449, 4 Sup. Ct. Rep. 466; Grace v. American Cent. Ins. Co. 109 U. S. 278, 27 L. ed. 932, 3 Sup. Ct. Rep. 207; Fidelity Mut. Life Asso. v. Jeffords, 53 L.R.A. 193, 46 C. C. A. 377, 107 Fed. 402; Rasicot v. Royal Neighbors, 18 Idaho, 85, 29 L.R.A.(N.S.) 433, 138 Am. St. Rep. 180, 108 Pac. 1048; Rupert v. Supreme Ct. U. O. F. 94 Minn. 293, 102 N. W. 715; Ranta v. Supreme Tent, K. M. 97 Minn. 454, 107 N. W. 156; Royal Neighbors v. Wallace, 73 Neb. 409, 102 N. W. 1020; Modern Woodmen v. Wilson, 76 Neb. 344, 107 N. W. 568.

The plaintiff's proposed amendment to the complaint should have been allowed. Zimmer v. Pauley, 51 Wis. 282, 8 N. W. 220; Johnson v. Tucker, 136 Wis. 505, 128 Am. St. Rep. 1097, 117 N. W. 1003;

J. I. Case Threshing Mach. Co. v. Eichinger, 15 S. D. 530, 91 N. W. 82.

The court erred in not allowing the plaintiff to prove that the answers in the application of which complaint is made, were *not* made by the *insured,* but were written in by the person who took the application, —the defendant's agent. Session Laws 1907, chap. 146, p. 228; 25 Cyc. 929, and cases cited under note 84; Lyon v. United Moderns, 148 Cal. 470, 4 L.R.A.(N.S.) 247, 113 Am. St. Rep. 291, 83 Pac. 804, 7 Ann. Cas. 672; Fell v. John Hancock Mut. L. Ins. Co. 76 Conn. 494, 57 Atl. 175; 25 Cyc. 937 sub-div. (V) text and cases cited under note 5 under enpoint 29 Cyc. 242, and cases cited under note 26; Moore v. Union Fraternal Acci. Asso. 103 Iowa, 424, 72 N. W. 645.

Defendant alleges and attempts to prove that the insured died from the tumor; that he had such tumor long before he took out the insurance. The court erred in not allowing plaintiff to prove that insured died from *hemorrhage,* and not from tumor. 25 Cyc. 243, 921, 941; 29 Cyc. 242, 928; Fell v. John Hancock Mut. L. Ins. Co. 76 Conn. 494, 57 Atl. 175 Soules v. Brotherhood of American Yeomen, 19 N. D. 23, 120 N. W. 760.

*Greenleaf, Bradford, & Nash (Benj. D. Smith,* of counsel), for respondent.

A representation is deemed *false* when the facts fail to correspond with its assertions or stipulations. Rev. Codes 1905, § 5931.

The false representations in this case had been made express warranties by the contract of the parties. This question is settled in this jurisdiction. Satterlee v. Modern Brotherhood, 15 N. D. 92, 106 N. W. 561; Johnson v. Dakota F. & M. Ins. Co. 1 N. D. 167, 45 N. W. 799.

By uniting in the motion for a directed verdict, both plaintiff and defendant waived a submission of the case to the jury. By such motions both parties said to the court that there was no question or issue of fact to be submitted to the jury, and neither party will be permitted to urge that the issues should have been submitted to the jury. Bank of Park River v. Norton, 12 N. D. 497, 97 N. W. 860; Umsted v. Colgate Farmers' Elevator Co. 18 N. D. 309, 122 N. W. 390; American Case & Register Co. v. Boyd, 22 N. D. 166, 133 N. W. 65; 29 Cyc. 242, 928; Fell v. John Hancock Mut. L. Ins. Co. 76 Conn. 494, 57 Atl. 175; Soules v. Brotherhood of American Yeomen, 19 N. D. 23, 120 N. W. 760.

The respondent is a fraternal benefit society, and as such is not governed by the general insurance laws of the state. Peterson v. Manhattan L. Ins. Co. 244 Ill. 337, 91 N. E. 466, 18 Ann. Cas. 96; 29 Cyc. 7–11.

That § 5934, Rev. Codes 1905, being § 6501, Compiled Laws 1913, does *not* apply to fraternal benefit societies should be too clear for argument. This question has been passed upon and settled in several jurisdictions. Smith v. Supreme Lodge, K. & L. G. P. 123 Iowa, 676, 99 N. W. 553; Knapp v. Brotherhood of American Yeoman, 128 Iowa, 566, 105 N. W. 63; Knudson v. Grand Council, N. L. H. 7 S. D. 214, 63 N. W. 911; Hudnall v. Modern Woodmen, 103 Mo. App. 356, 77 S. W. 84; Newland v. Modern Woodmen, 168 Mo. App. 311, 153 S. W. 1097; Valeeroy v. Knights of Columbus, 135 Mo. App. 574, 116 S. W. 1130; Fawcett v. Supreme Sitting, O. I. H. 64 Conn. 170, 24 L.R.A. 815, 29 Atl. 614; State ex rel. Atty. Gen. v. Mutual Protection Asso. 26 Ohio St. 19; State v. Whitmore, 75 Wis. 332, 43 N. W. 1133; Titsworth v. Titsworth, 40 Kan. 571, 20 Pac. 213; Extended note in Penn. Mut. L. Ins. Co. v. Mechanics' Sav. Bank & T. Co. 38 L.R.A. 1.

The false representations and answers contained in the policy or contract were expressly made *warranties* on the part of the insured, and are subject to the general rules of construction of like contracts. They made the contract void from its inception.

That they were innocently made, or made in good faith and without intent to deceive or defraud, is wholly immaterial. The fact that the answers or statements were *false* is the test, and proof only to such extent is required. Beard v. Royal Neighbors, 53 Or. 102, 19 L.R.A. (N.S.) 798, 99 Pac. 83, 17 Ann. Cas. 1199; Hoover v. Royal Neighbors, 65 Kan. 616, 70 Pac. 595; Metropolitan L. Ins. Co. v. McTague, 49 N. J. L. 587, 60 Am. Rep. 661, 9 Atl. 766; Cobb v. Covenant Mut. Ben. Asso. 153 Mass. 176, 10 L.R.A. 666, 25 Am. St. Rep. 619, 26 N. E. 230; Modern Woodmen v. Von Wald, 6 Kan. App. 238, 49 Pac. 782; McDermott v. Modern Woodmen, 97 Mo. App. 636, 71 S. W. 833; 3 Cooley, Ins. 1954; 3 Joyce, Ins. § 1964; May, Ins. § 156; Bacon, Ben. Soc. § 197; Johnson v. Dakota F. & M. Ins. Co. 1 N. D. 171, 45 N. W. 799.

Where the section of our Code to which reference has been made applicable, nevertheless the policy or contract would be void, because

the matters misrepresented tended to increase the risk of loss, and therefore, such statements being express warranties, it is wholly immaterial in this case whether or not the same were made with intent to deceive.    Satterlee v. Modern Brotherhood, 15 N. D. 92, 106 N. W. 561.

Where the society is ignorant of the facts giving it the right to avoid the contract or to declare a forfeiture, any action or inaction upon its part cannot operate against it, by estoppel or waiver.    Finch v. Modern Woodmen, 113 Mich. 646, 71 N. W. 1104; Stuart v. Mutual Reserve Fund Life Asso. 78 Hun, 191, 28 N. Y. Supp. 944; Modern Woodmen v. Wieland, 109 Ill. App. 340; Marcoux v. St. John Baptist Beneficence Soc. 91 Me. 250, 39 Atl. 1027; Callies v. Modern Woodmen, 98 Mo. App. 521, 72 S. W. 713; Dunn v. Merrimack County O. F. Mut. Relief Asso. 68 N. H. 365, 44 Atl. 484; Prenster v. Supreme Council, O. C. F. 135 N. Y. 417, 32 N. E. 135.

The plaintiff's proposed amendment to the complaint would have amounted to a reformation of the contract sued upon; it would have been a different contract and a different cause of action.    In jurisdictions like ours, it is the rule that if a party relies upon estoppel or waiver, he must plead it.    3 Cooley, Ins. p. 2768; Parliman v. Young, 2 Dak. 175, 4 N. W. 139, 711; Gill v. Rice, 13 Wis. 549; Clarke v. Huber, 25 Cal. 594; Burlington & M. River R. Co. v. Harris, 8 Neb. 140; Waddle v. Morrill, 26 Wis. 611; Gaylord v. Van Loan, 15 Wend. 308; People ex rel. M'Kinch v. Bristol & R. Turnp. Road Co. 23 Wend. 122.

The question of legislative policy is not for the courts.    If the people of a state wish to change the public policy thereof in insurance matters by limiting the general rule of agency, it is for the legislature, and not the courts, to act.    Iverson v. Metropolitan L. Ins. Co. 151 Cal. 746, 13 L.R.A.(N.S.) 866, 91 Pac. 609; Dimick v. Metropolitan L. Ins. Co. 69 N. J. L. 384, 62 L.R.A. 779, 55 Atl. 291; Ward v. Metropolitan L. Ins. Co. 66 Conn. 227, 50 Am. St. Rep. 80, 33 Atl. 902; Johnson v. Dakota F. & M. Ins. Co. 1 N. D. 167, 45 N. W. 799; Modern Woodmen v. Angle, 127 Mo. App. 94, 104 S. W. 297.

The plaintiff's offer of proof was wholly improper for other reasons. It referred to other applications made by other persons, and to the mere fact that certain other applications had been changed or amended

and certain questions had not been asked of or answered by other applicants. All such testimony would have been inadmissible. First Nat. Bank v. North, 2 S. D. 480, 51 N. W. 96; Thomp. Trials, § 678; Wigmore, Ev. § 17 b. (2); Herndon v. Black, 97 Ga. 327, 22 S. E. 924; Over v. Schiffling, 102 Ind. 191, 26 N. E. 91; Farleigh v. Kelley, 28 Mont. 421, 63 L.R.A. 319, 72 Pac. 756.

CHRISTIANSON, J. This is an action upon a benefit certificate or policy of fraternal life insurance in the sum of $3,000, issued to the plaintiff's husband, Jiles J. Van Woert, for the plaintiff's benefit. The application for such insurance was made on May 8, 1909, and the benefit certificate or policy issued on May 31, 1909, and delivered to the insured on June 12, 1909. The insurance contract consists of the beneficiary certificate together with the application therefor. The application for insurance contains thirty-five questions, together with the answers of the insured thereto. The insured, Jiles J. Van Woert, died on August 30, 1911. The cause of his death being what is commonly known as tumor of the brain.

The application is expressly made a part of the beneficiary certificate, and a copy thereof attached to and made a part of such insurance contract. The application consists of thirty-five questions and answers, and at the top of each page of the application it is provided that the application must be completed in the presence of and with the aid of the camp physician. After all the questions and answers in the application and above the signature of the applicant, the following is found: "Applicant will please note this clause." "I have verified each of the foregoing answers and statements from 1 to 35, both inclusive, adopt them as my own, whether written by me or not, and declare and warrant that they are full, complete, and literally true, and I agree that the exact, literal truth of each shall be a condition precedent to any binding contract issued upon the faith of the foregoing answers. I further agree that the foregoing answers and statements, together with the preceding declaration, shall form the basis of the contract between me and Modern Woodmen of America, and are offered by me as a consideration for the contract applied for, and are hereby made a part of any benefit certificate that may be issued on this application, and shall be deemed and taken as a part of

such certificate; that this application may be referred to in said benefit
certificate as the basis thereof, and that they shall be construed to-
gether as one entire contract; that inasmuch as only the head officers
of the society have authority to determine whether or not a benefit
certificate shall issue on any application, and as they act upon the
written, statements, answers, warranties, and agreements herein made,
no statements, promises, knowledge, or information had, made, or given
by or to the person soliciting, taking, or writing this application, or
by or to any person, shall be binding on the society or in any manner
affect its rights, unless such statements, promises, knowledge, or in-
formation be reduced to writing and presented to the head officers of
the society at or before the time any benefit certificate shall be issued
hereon; and I further agree that if any answer or statement in this
application is not literally true, that my benefit certificate shall be
void. . . ." Among the questions propounded to applicant in the
application are the following two questions (to both of which he an-
swered, "No."): (a) "Have you, within the last seven years, been
treated by or consulted any person, physician, or physicans in regard
to personal ailment?" (b) "If so, give dates, ailments, duration of
attacks, and name and address of each and all persons or physicians
consulted or by whom treated." "Have you ever had any of the fol-
lowing named diseases or symptoms, to wit, . . . tumors?" The
application containing the answers and warranties of the applicant
was signed by the applicant. In the body of the benefit certificate it
is expressly agreed: "This benefit certificate is issued and accepted
only upon the following *express warranties,* conditions, and agree-
ments: . . . (1) That the Modern Woodmen of America is a
fraternal beneficiary society. . . . That the application for bene-
ficial membership in this society made by the said member, a copy of
which is hereto attached, and made a part hereof, together with the
report of the medical examiner, which is on file in the office of the
head clerk, and is hereby referred to and made a part of this con-
tract, is true in all respects, and that the literal truth of such applica-
tion, and each and every part thereof, shall be held to be a *strict war-
ranty,* and to form the only basis of the liability of this society to
such member and to his beneficiary or beneficiaries, the same as if fully
set forth in this certificate. (2) That if said application shall not be

literally true in each and every part thereof, then this benefit certificate shall, as to said member, his beneficiary or beneficiaries, be absolutely null and void. (5) . . . If his said application for membership or any part of it shall be found in any respect untrue, then this certificate shall be null and void and of no effect, . . . and all rights and benefits which may have accrued on account of this certificate shall be absolutely forfeited and this certificate shall become null and void."

On the first page of the benefit certificate, printed in large red type (in fact this is the only part of the certificate in red type), is found the following: "A copy of your application for membership is attached to this certificate—READ IT—if any answer or statement therein is not correct, notify the head clerk at once."

The principal defense is that the policy is void because the answers made by the insured in the application, to the effect that he never had a tumor and that he had not within the last seven years been treated by or consulted any person, physician, or physicians in regard to his personal ailments, were untrue, and that his untrue answer to such questions were breaches of the warranties contained in the application and beneficiary certificate. The case came on for trial before a jury, and the undisputed testimony showed that in the year 1907 Jiles J. Van Woert's left eye became inflamed, presumably from flax chaff. On bandaging his left eye, he discovered that he could not see well with his right eye. His condition growing no better, in the spring of 1908 he consulted Dr. A. Carr, of Minot, North Dakota, relative to his eyes. At that time he gave Dr. Carr a history of the trouble, and the doctor made an examination for the purpose of diagnosis and treatment, and found that there existed a partial atrophy of the optic nerve, slight as to the left eye, and more pronounced as to the right eye. The field of vision was contracted, and this contraction was more pronounced in the right eye than in the left. Dr. Carr then advised Mr. Van Woert that this affliction was not a primary one, and that he was unable to diagnose the primary trouble, but further advised Van Woert to consult specialists in Minneapolis and St. Paul relative thereto. That thereafter, and in January, 1909, Van Woert returned to Dr. Carr for further consultation and treatment, and at that time told Dr. Carr that he had visited specialists in St. Paul and that they had directed him to return to Dr. Carr for further treatment, and Dr. Carr did so

29 N. D.—29.

treat him for some time, and he did not recover. Aside from the condition of his eyes and the apparent atrophy of the optic nerve, the deceased was a robust and apparently strong, healthy man. During all the time subsequent to the deceased's first treatment by Dr. Carr, there had been a gradual loss of vision on the part of the deceased, and in the spring of 1910 he went, by the advice of his physician at Mohall, N. D., to Dr. C. E. Riggs of St. Paul, Minnesota, for diagnosis. Dr. Riggs is a specialist in the line of neuro diagnosis. On consultation Mr. Van Woert disclosed the facts, heretofore recited, to Dr. Riggs relative to his physical condition, and further disclosed that in the fall of 1909 he was taken with projectile vomiting followed by vertigo. He commenced to have severe headaches, began to take on flesh rapidly, was troubled with loss of memory, and was unable to distinguish certain well-defined odors, and could not tell sweet from bitter. After an examination of the case, Dr. Riggs diagnosed the same as tumor of the brain, and advised Van Woert to go to Dr. Harvey Cushing, then of Johns-Hopkins Hospital, at Baltimore, Maryland, for operation. This he did and was operated upon in the early summer of 1910 for tumor of the brain, or more properly speaking tumor of the pituitary body, one of the ductless glands located at the base of the brain about 1½ or 2 inches back of the eye.

The atrophy of the optic nerve heretofore referred to was caused by a pressure upon the optic nerve,—this pressure being induced by the enlargement or tumor of the pituitary body. At the time of the operation Van Woert had become totally blind in his right eye and vision in his left eye was every greatly impaired. A portion of the pituitary body was removed, and Van Woert returned to Dakota hopeful of recovery. He disclosed to Dr. Cushing, aside from the facts heretofore recited, that long prior to any apparent illness upon his part he had been kicked in the head by a horse.

Van Woert died about August 31, 1911, and the direct cause of his death was the tumor of the brain or pituitary body above referred to.

Dr. Cushing is in charge of the department of neural surgery of Harvard Medical College, and formerly was in charge of the same department in Johns-Hopkins University. He has written a book upon disorders of the pituitary body, and is one of the recognized authorities in the United States upon the subject. He testified that in

his opinion Van Woert had been suffering from the disorder, to wit, tumor of the pituitary body for many years, and that the same was in existence as early as 1907.

Dr. Riggs is a diagnostician of long years' experience and is one of the recognized authorities on neuro diagnosis. He testified that in his opinion the tumor referred to was in existence as early as 1907.

Dr. Carr testified that a tumor of the pituitary body was an extremely dangerous affliction, and the percentage of deaths resultant therefrom under the recorded cases was very high; that atrophy of the optic nerve was not a primary disorder, and danger to a patient's life therefrom depended to some extent upon the nature of the primary disorder. All the medical experts agreed that the impaired vision of Van Woert, and his eye trouble in 1908 and thereafter, doubtless was due to the tumor in question, and no other cause. The above recited testimony was uncontradicted.

At the close of the testimony, both sides moved for a directed verdict. The court thereupon discharged the jury, and subsequently made findings of fact, and ordered judgment in favor of the defendant for a dismissal of the action. The appeal is taken from the judgment so entered.

The first error complained of by appellant is the failure to submit the case to the jury. The record in this case shows that at the close of the testimony and after both parties had rested, both plaintiff and defendant made motions for a directed verdict, whereupon the court said: "Both of these motions, coming at the close of the testimony, leaves the matter for the court, and not for the jury." So, so far as this action is concerned, gentlemen of the jury, you may be excused from any further attendance in this case." No request was made by either side to have any issue of fact submitted to the jury. It is the settled law in this state that under these circumstances, the jury was properly discharged and all questions of law and fact determined by the court. "By making these motions for the direction of a verdict, the attitude of each party was that there was no issue of fact to be submitted to the jury, and that the court should dispose of the case as a matter of law. By such motions they are deemed to have impliedly consented to a disposition of the case without the aid of a jury, by the submission of all questions to the court; and if, in disposing of the

case, it should become necessary for the court to determine issues of fact, such parties will not thereafter be permitted to urge that such issues should have been submitted to the jury." American Case & Register Co. v. Boyd, 22 N. D. 166, 167, 133 N. W. 65. See also Erickson v. Citizens' Nat. Bank, 9 N. D. 81, 81 N. W. 46; Bank of Park River v. Norton, 12 N. D. 497, 97 N. W. 860; Umsted v. Colgate Farmers' Elevator Co. 18 N. D. 309, 122 N. W. 390.

Appellant's next contention is that applicant had no actual intent to deceive the defendant by the erroneous answers, and that under the provisions of § 6501 of the Comp. Laws of 1913, and the construction placed thereon by this court in the case of Soules v. Brotherhood of American Yeomen, 19 N. D. 23, 120 N. W. 760, the statements contained in the application must be treated as representations rather than warranties. Respondent, on the other hand, contends that under the provisions of § 5043, Comp. Laws 1913, the defendant is not subject to the general insurance laws of the state, and that for that reason § 6501 of the Comp. Laws has no application. The greater portion of appellant's argument is devoted to an attack upon the defendant and its methods of doing business, and it is contended that the defendant is not in fact a fraternal beneficiary society, but is merely an insurance company, and for that reason is not entitled to be exempted from the general insurance laws even though such associations are exempted from the provisions of such laws. Appellant's counsel also severely criticizes the wisdom and policy of such laws. The fact that the defendant in this case is a fraternal beneficiary association is not open to controversy, as this fact is expressly pleaded in plaintiff's complaint and admitted in the answer. Whether it is a wise legislative policy to exempt fraternal beneficiary societies from the operation of general insurance laws, either in whole or in part, as provided by §§ 5043 and 5061A, Comp. Laws 1913, is not a question for this court to determine. This court is itself created by law, and is not superior to, but bound by all valid enactments of, the legislature. Its function is to interpret, not to make, laws. Whether or not valid legislative enactments are wise or unwise, desirable or undesirable, is not for us to say, but is purely a question for the legislature, and the responsibility for the continuation or abolishing of such legislative policy rests solely upon the legislature, and not upon the courts.

It is unnecessary for us, in this case, to decide whether or not § 6501, Comp. Laws 1913, is applicable or inapplicable to the contract involved in this case. And for the purpose of deciding this case we will assume, without deciding, that this section applies. The section in question is as follows: "No oral or written misrepresentation made in the negotiation of a contract or policy of insurance by the insured, or in his behalf, shall be deemed material or defeat or avoid the policy or prevent its attaching, unless such misrepresentation is made with actual intent to deceive, *or unless the matter misrepresented increased the risk of loss.*" The statement by the applicant that he had not been treated by or consulted any physician in regard to any personal ailment within the seven years last preceding the date of the application was contained in the application, signed by him and referred to in the policy and is expressly declared to be a warranty by the parties to the contract and must be given such effect by this court. §§ 6519–6528, Comp. Laws 1913; Satterlee v. Modern Brotherhood, 15 N. D. 92, 98, 106 N. W. 561.

In Soules v. Brotherhood of American Yeomen, 19 N. D. 23, 120 N. W. 760, this court held that § 6501 of the Compiled Laws applied to statements contained in the application denominated warranties as well as to so-called representations, and that "there is no more reason why a warranty not material to the risk should vitiate a policy, than there is that misrepresentations as to a nonmaterial fact should do so." We have no intention of disapproving the doctrine laid down in that case, but on the contrary entirely approve thereof. It will be observed, however, that under the express language of § 6501, Comp. Laws, as well as the decision of this court in Soules v. Brotherhood of American Yeomen, supra, it is held that if the matter so misrepresented or falsely warranted increased the risk that then it would avoid the policy. The question is therefore, Did the matters misrepresented and falsely warranted by the applicant in this case increase the risk? It cannot be said that the question whether applicant had consulted a physician within the last seven years asked for an expression of opinion. It asked for certain information which applicant could give more readily and accurately than any other person. The latter part of the same question asks for particulars, including the names and addresses of the physicians consulted. Even though applicant believed

that the trouble with his eyes was only local, still the defendant had a right to a complete, truthful answer in order that it might make such further investigation as it· deemed necessary. By answering the question in the negative, the applicant withheld from the defendant the very information the question submitted was expected to furnish.

The applicant warranted that he had not consulted a physician within the last seven years, and that he was not suffering with a tumor. The undisputed evidence in this case shows that both of these warranties were · untrue. They were both material facts which increased the risk. The truth of the conditions warranted is a condition precedent to recovery. Whether the applicant acted in good faith is immaterial. Satterlee v. Modern Brotherhood, supra, Bacon,' Ben. Soc. § 197. McDermott v. Modern Woodmen, 97 Mo. App. 636, 71 S. W. 833. As was said by this court in the case of Satterlee v. Modern Brotherhood, supra: "If the matter misrepresented increased the risk of loss, it is still wholly immaterial whether the matter was intentionally or innocently misrepresented. The applicant in this case warranted that she was not pregnant. That this warranty was untrue cannot be seriously questioned. That a state of pregnancy materially increased the risk of loss is abvious. It was a material fact which increased the risk of loss; and the warranty with respect to it was untrue, however innocent the applicant may have been of any intentional misrepresentation. The warranty being false, the contract was viti-·ated." The decision of this court in the case of Soules v. Brotherhood of American Yoemen, supra, in no manner questioned the soundness of the doctrine laid down by this court in the case of Satterlee v. ·Modern Brotherhood, but merely held that a warranty not material to :the risk would not vitiate the policy any.more than a misrepresentation as to a nonmaterial fact would do. We are clearly satisfied that the risk in this case was greatly increased by reason of the misstatements made by the applicant, as it is established by the undisputed evidence in this case that the very ailments for which he had been seeking medi- ·' cal treatment were the recognized symptoms of the disease from which he eventually died. In view of the false warranties the policy never attached, but was void *ab initio*. "A breach of warranty without fraud merely exonerates an insurer from the. time that it occurs, *or 'when it is broken in its inception, prevents 'the policy from attaching*

*to the risk."* Comp. Laws, 1913, § 6528. McDermott v. Modern Woodmen, supra; Beard v. Royal Neighbors, 53 Or. 102, 19 L.R.A. (N. S.) 798, 99 Pac. 83, 17 Ann. Cas. 1199; Hoover v. Royal Neighbors, 65 Kan. 616, 70 Pac. 595; Cobb v. Covenant Mut. Ben. Asso. 153 Mass. 176, 10 L.R.A. 666, 25 Am. St. Rep. 619, 26 N. E. 230.

Complaint is also made of the court's ruling in sustaining an objection to an offer of proof made by the defendant, and the refusal to permit an amendment of the complaint at the close of plaintiff's case. The evidence offered was so clearly inadmissible and the court's rulings in excluding the same so entirely proper, under the most elementary and fundamental rules of evidence, that no good purpose would be served by entering into a lengthy discussion of this feature of the case.

The proposed amendment to the complaint was to the effect that the defendant had received the last assessment and proof of death of the insured, and that the board of directors had taken action thereon, and that for that reason defendant was estopped to deny liability. This constituted matter in avoidance of the affirmative defense set forth in the answer, and might have been proper by way of reply, but had no place in the complaint. And under the provisions of §§ 7467–7477, Comp. Laws 1913, plaintiff could have offered the evidence in question without a reply. Plaintiff, however, offered no evidence whatever in support of this proposition. But plaintiff would not be entitled to recover even though such evidence had been introduced. It is not contended that defendant or its officers had any knowledge of the false warranties at the time of the receipt of the assessment or the proofs of death. On the contrary, it is conceded that they had no such knowledge or notice until sometime subsequent thereto, and that when such knowledge and notice was received, payment under the benefit certificate was promptly refused. In the absence of such knowledge or notice there can be no estoppel or waiver on the part of the defendant. 25 Cyc. 859; Bacon, Ben. Soc. § 436; Finch v. Modern Woodmen, 113 Mich. 646, 71 N. W. 1104; Modern Woodmen v. Wieland, 109 Ill. App. 340; Marcoux v. St. John Baptist Beneficence Soc. 91 Me. 250, 39 Atl. 1027; Callies v. Modern Woodmen, 98 Mo. App. 521, 72 S. W. 713; Dunn v. Merrimack, County O. F. Mut. Relief Asso. 68 N. H. 365, 44 Atl. 44; Preuster v. Supreme Council O. C. F.

135 N. Y. 417, 32 N. E. 135; Stuart v. Mut. Reserve Fund L. Ins. Co. 78 Hun, 191, 28 N. Y. Supp. 944.

We find no error in the record which would justify a reversal of the judgment; the findings of the trial court are sustained by the undisputed evidence in the case, and the conclusions of law of the trial court are clearly correct. The judgment appealed from is therefore affirmed.