22351.   FRANKLIN FIRE INSURANCE CO. *v.* SHAHAN.

DECIDED DECEMBER 23, 1932.

182

*Joe V. Williams, Maddox, Matthews & Owens,* for plaintiff in error.

*Porter & Mebane, James F. Kelly,* contra.

JENKINS, P. J.  (After stating the foregoing facts.)  As is conceded by counsel for both sides, the instant suit was based upon a Tennessee contract, and the validity, form and effect of the contract are to be determined by the laws of that State.  Civil Code (1910), § 8.

The policy contains a provision that it shall be void "if the assured shall not be the sole and unconditioned owner in fee of said property."  It would seem that under the decisions of the courts of Tennessee, as offered in evidence in the instant case, the plaintiff was the "sole and unconditioned owner in fee" of the property insured, although there was outstanding, at the time the policy was issued, at least one deed of trust to the farm on which the property insured was located, executed by the plaintiff's predecessor in title to secure a debt which had not been paid.  It seems undisputed that the plaintiff was the equitable owner of the property, although it was subject to the existing encumbrances, and the legal title had been conveyed by his predecessor in title to secure such encumbrances.  In Hughes *v.* Millers Mutual Fire Ins. Co., 147 Tenn. 164 (246 S. W. 23, 28 A. L. R. 797), the Supreme Court of Tennessee, in a case in which the fire insurance policy sued on contained provisions almost identical with those in the policy here sued on, and where there was an outstanding trust deed by which the assured had conveyed the property to secure a debt, held:  "The existence of a mortgage, vendor's lien, or retained title on insured property, is not material to the risk, and a failure to disclose such an encumbrance will not avoid a policy of fire insurance, even though conditioned on the insured being the sole and unconditional owner."  To the same effect are the holdings in Delahay *v.* Memphis Ins. Co., 27 Tenn. (8 Humph.) 684; Manhattan Ins. Co. *v.* Barker, 54 Tenn. (7 Heisk.) 503.  In this connection it should be noted that in Tennessee, contrary to the rule in Georgia, a mortgage is held to convey title, and not merely to create a lien.  Lieberman *v.* Knight, 153 Tenn. 268, 279 (283 S. W. 450).  In Insurance Co. *v.* Crockett, 75 Tenn. (7 Lea) 725, the property insured was held by the assured under a bond for title, and the policy provided that if the interest of the insured was other than "the entire, uncondi-

tional and sole ownership of the property," it must be so represented to the company, and so expressed in the written policy, otherwise the policy should be void. The court held that the assured, as the equitable owner of the property was "the entire and sole owner" within the meaning of the policy. It would seem clear that under these decisions of the Tennessee court, the plaintiff as the equitable owner of the property, was the sole and unconditional owner thereof, within the meaning of the policy sued on, and that the fact that there were outstanding encumbrances against the property, placed thereon by a former owner, of which the plaintiff had knowledge, did not violate this clause of the policy. The defendant relies upon the case of Nash Motor Sales Co. *v.* National Liberty Ins. Co. of America, decided by the Court of Appeals of Tennessee and reported in 10 Tenn. App. 4. While we have not access to this volume, the decision of the court is set forth in full in the brief of evidence. It appears that in that case the property involved was an automobile, which had originally been sold to one Stafford by the Clark Motor Company of McMinnville, Tenn., the vendor retaining title to the property. Thereafter Stafford, without the consent of his vendor, and without having paid the title-retention notes, sold the property to the plaintiff, the Nash Motor Sales Co. The plaintiff, in turn, sold the property to Singleterry, and in Singleterry's name procured a policy of theft insurance from the defendant, the loss, if any, being payable to the plaintiff. Later Singleterry sold the car to Dukes, who assumed the payment of the plaintiff's title-retention notes, and the insurance company issued a rider, which was attached to the policy, agreeing that Singleterry's interest be assigned to Dukes. The automobile was stolen from Dukes, and was never recovered. Dukes assigned his interest in the theft policy to the plaintiff, Nash Motor Sales Company, and it brought suit against the insurance company to recover on the policy. The plaintiff, at the time it acquired the automobile from Stafford, had no notice of the existence of the title-retention notes which the original vendor, Clark Motor Company, was holding, but received notice thereof after the issuance of the policy sued on, and prior to the theft. The plaintiff, however, did not notify the insurance company of the existence of the claim of the Clark Motor Company. The Tennessee appellate court, while recognizing the correctness of the previous rulings by the Supreme

Court of Tennessee as set forth in the cases herein cited, held that the insurance company was not liable to the plaintiff on the policy there sued on. The court said: "In all of our cases holding that a mortgage, lien or other encumbrance did not violate the sole ownership clause of the policy sued upon the insured had either contracted or assumed the mortgage indebtedness and was personally liable for it after the destruction or loss of the property, and therefore had as much interest to protect the property as he would have had had the property not been encumbered. But in the cause at bar neither the Nash Motor Sales Company nor Singleterry nor Dukes were liable to the Clark Motor Company on its title-retention note which constituted the lien, and they therefore did not have the same interest to protect the car that they would have had had the lien of said title-retention note not existed. . . In our opinion the case at bar is clearly distinguishable from the cases cited above, and the lien of the title-retention note of the Clark Motor Company did violate the sole ownership clause of the policy."

It is insisted by counsel for the defendant in the instant case, that since the plaintiff had never assumed the indebtedness secured by the trust deeds outstanding at the time he acquired the property, and had never become personally liable thereon, the instant case is controlled adversely to him by the ruling of the Court of Appeals of Tennessee in Nash Motor Sales Co. *v.* National Liberty Ins. Co., supra. It seems to us that the instant case is clearly distinguishable from the Nash case. In that case the property insured was personalty, an automobile. Its destruction, or loss by theft, terminated the interest of the plaintiff, and since the only thing against which the original vendor could enforce his lien no longer existed, the plaintiff, who was not liable personally to such original vendor, necessarily had no interest in the payment of the debt. In other words, the plaintiff's interest in the payment of the debt was coextensive with the property itself; and when one no longer existed the other necessarily disappeared. Here the situation is altogether different. The property insured was a part of the realty, a dwelling house on a 200-acre farm. The loss of the dwelling house, the property insured, did not destroy the interest of the plaintiff in the payment of the debt represented by the outstanding trust deed, although he had never assumed the payment of such debt so as to render himself personally liable thereon, be-

cause the holder of the obligation could still enforce it against the plaintiff's property. The evidence indicates, and that without dispute, that even after the destruction of the dwelling house, the real estate was well worth considerably more than the outstanding encumbrance. Consequently, the plaintiff was as vitally interested in the payment of the debt incurred against the property by his predecessor in title as if he had personally assumed liability thereon so as to authorize a personal suit against him. We think, therefore, that the instant case is clearly distinguishable from the case of Nash Motor Sales Co. v. National Liberty Ins. Co., supra., and that under the decisions of the Supreme Court of Tennessee hereinbefore cited, the plaintiff was the sole and unconditional owner of the property within the meaning of the policy sued on. Accordingly, as to this defense to his suit, a finding in his favor was demanded.

■ Dealing now with the defense offered by the insurance company that the statements contained in the plaintiff's application for the insurance were false, and were fraudulently made in order to induce the issuance of the policy, section 3306 of Shannon's Annotated Code of Tennessee (1917), introduced in evidence in the instant case, provides as follows: "No written or oral misrepresentation or warranty therein made in the negotiations of a contract or policy of insurance, or in the application therefor, by the assured or in his behalf, shall be deemed material or defeat or void the policy or prevent its attaching, unless such misrepresentation [or warranty] is made with actual intent to deceive, or unless the matter represented increase the risk of loss." It is insisted by counsel for the defendant that the purpose and effect of this statute is to render any representation, made with actual intent to deceive, a material one so as to void the policy; and also that the policy is voided if "the matter represented increase the risk of loss," irrespective of whether such representation was made with actual intent to deceive. Counsel cite no case from Tennessee wherein such a construction is placed upon the statute. In Hartford Life Insurance Co. v. Stallings, 110 Tenn. (2 Cates) 1 (72 S. W. 960), it was said: "Whatever the form of the agreement in the application may be, the statute incorporates itself into every policy issued after it becomes operative and serves as an effectual bar to the destruction of the right of the beneficiary, where innocent mistakes

of fact which are not material to the risk have been made." It should be noted that the words "or warranty," appearing in brackets in the quoted provision of the statute, as embodied in the cited volume of Shannon's Code, were not contained in the act of the Tennessee Assembly, but in the Stallings case last cited it was held that the statute must be construed as if such words were repeated in the last clause thereof. In the body of the opinion in that case the court said: "Confessedly the intention of the legislature, as shown in the introductory clause, was to put 'representations' and 'warranties' upon the same footing, and make them harmless in the destruction of the policy, when as affirmances of facts they were made in good faith and were immaterial. To hold, from the failure to repeat the word 'warranty' in the concluding clause of the section, that it was not covered by the provisions, would be to reverse the rule of liberal construction already announced, and narrow this legislation, so that it would not accomplish any practical good to the policy holder. For, if it be true, as here argued, that the section keeps up the common-law distinction between 'warranties' and 'representations,' and serves only the purpose of bringing within its saving effect the latter, then its passage was an idle legislative ceremony. For the law was, without the aid of the statute, that, only when a representation was made of and concerning a fact material to the risk, could its falsity be asserted to defeat recovery in a matured policy. Southern Life Ins. Co. v. Booker, 9 Heisk. 624 (24 Am. R. 344) ; Kerr on Insurance, 319, 329; Bliss on Insurance, § 36. The statute can not be so curtailed in its effect. It was directed to every misrepresentation, whether in the form of a 'representation' or 'warranty,' and as against every such 'misrepresentation,' when innocently made and immaterial in character, the right of the policy holder will prevail." It will be seen, therefore, that, as stated by the Supreme Court of Tennessee in the Stallings case, the purpose of the statute was to "relieve against the hardships arising from the enforcement of the common law as to warranties in insurance policies, which was often invoked by companies which had issued them to defeat recoveries, when the matters covered by these warranties had no real or proximate relation to the risk assured. By the aid of such warranties and the innocent mistakes of the insured, it often happened that the insurer was able to escape liability on a ground having no legal merit

and of the purest technicality." In this connection the court cited Penn Mutual Life Ins. Co. *v.* Mechanics Savings Bank & Trust Co., 19 C. C. A. 316 (73 Fed. 653, 38 L. R. A. 70). We conclude, therefore, that the purpose of the Tennessee statute was not to avoid a policy of insurance on account of some immaterial misrepresentation made by the assured, even though made with actual intent to deceive.

■ But it is further contended that the insured represented that he had sustained no prior loss by fire, when in fact he had sustained such a loss, and was negotiating with another insurance company for a settlement thereof even at the time the application for the policy sued on was made. These facts appear without dispute from the record. The question now is whether the concealment of these facts, or the failure of the assured to disclose them, was material to the risk. The statute (Shannon's Code, supra) provides that the representation, or warranty (in the instant case the representation as to prior loss seems to have been both, because the application was made a part of the policy), must be such as will "increase the risk of loss." The court in the instant case, in charging the jury with reference to this defense of the insurance company, instructed them as follows: "Defendant says that its risk has been increased because of another false statement he made, that he had not had a fire, and they say that the evidence here discloses (and you have heard what it is) that he did have a fire just a short time prior to making this application, that a barn was destroyed, that he had a fire, and he had insurance on the barn; you will learn about that, whether the barn was destroyed and he settled for fifty dollars; and that is a matter for the jury to determine. Defendants say that by reason of that fact their risk was increased, and if they had known of that fact they would not have issued the policy. This is a matter for your consideration. If you think or come to the conclusion that that increased the risk, that fact alone, if that fact increased the risk of the insurer, the insurance company, then it would void the policy, and he could not recover."

Exception is taken to this charge, on the ground that under the undisputed testimony in the case the plaintiff falsely stated in his application for the policy sued on that he had never suffered any loss by fire, and the undisputed evidence shows that he had suffered such loss, and the policy was therefore void under its express

provision that "if any false statements are made in said application, or otherwise, . . then and in each and every one of the above cases this policy shall be null and void." It is further insisted in this connection that section 3306 of Shannon's Code of Tennessee relates only to fraud in the procurement of a policy, and does not deal with or undertake to change in any way the provisions of the policy contract itself.

Further in his charge the judge instructed the jury with reference to this particular defense of the company, as follows: "So, after all, I think that under this law of Tennessee that the question for you to determine is whether or not the insurance company had its risk increased by reason of the fact that he made a false statement as to whether or not a fire had occurred prior to this time. If you think that increased its risk to the company, and made it more hazardous, and the risk would have been more hazardous, by reason of the fact that he denied that he had a loss by fire, you would be authorized to find for the defendants." This charge is excepted to on the ground that the question as to whether the false statement referred to was material and increased the risk of the insurance company was one for determination by the court, and not for the jury; that the charge in substance submitted to the jury the single issue as to whether or not the risk of the defendant company was increased by such false statement as to whether or not the insured had suffered previous loss by fire, and was calculated to lead the jury to believe that each and all of the other defenses set up in the case were eliminated from their consideration; that it eliminated from the jury's consideration the defense set up by the company, that, irrespective of any fraud in the procurement of the policy, it was void under its express terms by reason of the false answer given in the application to the question of whether any fire loss had been incurred; that the charge in effect directed a verdict against the defendant on every issue in the case except the single one there dealt with.

As we understand the laws of Tennessee, the quoted section of Shannon's Code has the same effect on the warranty embraced in the policy as it does on any representation made to induce the issuance of the policy. If the warranty relates to an *immaterial* matter, it does not avoid the policy. And the only matter, under the Tennessee law, to which the warranty or the representation re-

lated which could have been material was that wherein the insured represented, and in effect covenanted,. that he had sustained no prior loss by fire. This, it seems to us, was the only issue in the case. And this issue, we think, the court properly submitted to the jury as one of fact. In Mutual Life Ins. Co. *v.* Dibrell, 137 Tenn. 528, 539 (194 S. W. 581, L. R. A. 1917E, 554), cited by the defendant, it is said: "Our statute, unlike those in Texas and Missouri, does not in terms make the latter question one for the jury. In the states where the statutes are identical with ours, it has been held that the question as to whether a misrepresentation increases the risk of loss *may be one of law for the court.* Dolan *v.* Mutual Reserve, etc., 173 Mass. 197 [53 N. E. 398]; Johnson *v.* National L. Ins. Co., 123 Minn. 453 [144 N. W. 218, Ann. Cas. 1915A, 458]; Van Woert *v.* Woodmen, 29 N. D. 441 [151 N. W. 224]. And see Taylor *v.* Grant Lodge, 96 Minn. 441 [105 N. W. 408, 3 L. R. A. (N. S.) 114]." (Italics ours.) We think the effect of this decision is to hold that the question of whether or not a false representation increases the risk of loss is not always a jury question, but in some cases may be determined by the court as a matter of law. The Dibrell case was a life-insurance case, and the effect of the holding was that, as a matter of law, the failure of the insured to disclose that he had been examined four times, on three other different applications for life insurance, within three months prior to the issuance of the policy sued on, and that no policies had been issued to him by such other companies, rendered the policy sued on a void one. In Johnson *v.* National Life Ins. Co., (supra) cited in the Dibrell case, it was held that. under the provisions of a statute very similar in import to the Tennessee statute, the question of whether a misrepresentation increases the risk of loss is usually one for the jury, with the burden of proof upon the insurer. See also L. R. A. 1917E, 554, 559. Such would seem to be the general rule where the evidence is conflicting, or is of such a character that different inferences might reasonably be drawn therefrom. 33 C. J. 133. And in Georgia it is held that it is for the jury to say whether a false representation is material to the risk (*Connecticut Mutual Life Ins. Co.* v. *Mulkey,* 142 *Ga.* 358, 82 S. E. 1054; *Life Ins. Co. of Va.* v. *Pate,* 23 *Ga. App.* 232 (3), 97 S. E. 874), except in cases where all the testimony relating to the question of fact excludes every reasonable inference but one. *Mu-*

*tual Life Ins. Co.* v. *Bolton,* 22 *Ga. App.* 566 (96 S. E. 442); *Wilkins* v. *National Life & Accident Ins. Co.,* 23 *Ga. App.* 191 (3) (97 S. E. 879).

It was held in the Dibrell case, supra, that the phrase "increases the risk of loss," as employed in the quoted section of Shannon's Code, means "increases the risk," and that the determining factor, where a misrepresentation has been made, is "whether the answer would have influenced the company in deciding for itself, and in its own interest, the important question of accepting the risk, and what rate of premium should be charged." See also, in this connection, Volunteer State Life Ins. Co. *v.* Richardson, 146 Tenn. 589, 598 (244 S. W. 44, 26 A. L. R. 1270); Hughes *v.* Ætna Ins. Co., 148 Tenn. 293, 301 (255 S. W. 363). There is, however, no exception to the charge of the court in the instant case on the ground that the instruction given did not correctly define the phrase "increases the risk of loss" as used in Shannon's Code.

There was evidence in the instant case that the agent of the insurance company who inspected the premises might readily have seen and did see the ruins of the barn which had been destroyed by fire a short time previously to the application for the instant policy, and there is nothing to indicate that the assured made any effort to conceal the same from him. There was also testimony from the assured to the effect that he signed the application in blank, and the questions contained therein were not propounded to him. This would not of itself relieve him from the representations purporting to have been made in the application, since the application was made a part of the policy, and by the terms of the policy the representations made therein became warranties, which warranties, however, under Shannon's Code, stand upon the same footing as mere representations. We think, however, that under the particular facts and circumstances the jury were not required to find that the representation of the assured that he had suffered no previous loss by fire was material to the risk, and that the question was properly submitted to the jury as one of fact. The remaining assignments of error on the instructions dealt with in this division of the opinion, in view of what has elsewhere been said, were without merit.

■ The charge of the court fully stated the contentions of the defendant, especially with reference to the one issue involved under the pleadings and the evidence.

■

■ While the court stated to the jury in one portion of his charge that they would "take the evidence from the witness stand delivered to you, and the law from the court," this instruction could not have been erroneous as excluding from the consideration of the jury the documentary evidence offered by the defendant, since the court further instructed the jury that they would have out with them the policy sued on, "together with the other documentary evidence that has been submitted to you, except the laws of Tennessee, which is for consideration by the court. You are judges of all the facts outside of that."

■ The charge of the court was full and fair, and submitted to the jury the only issue of fact involved in the instant case. The verdict in favor of the plaintiff was authorized, and for no reason assigned can it be here set aside.

*Judgment affirmed. Stephens and Sutton, JJ., concur.*