NELLIE L. COBB *vs.* COVENANT MUTUAL BENEFIT ASSOCIATION.

Bristol.    October 29, 1890. — January 17, 1891.

Present: FIELD, C. J., W. ALLEN, C. ALLEN, & KNOWLTON, JJ.

*Benefit Insurance — Forfeiture — False Answer — Charge to Jury as to Fact — Practice.*

An applicant for benefit insurance, agreeing that the contract shall be avoided if the answers made by him in his application are not "true," makes their truth the basis of the contract; and an untrue answer, whether intentionally false or not, will forfeit the insurance.

If an applicant for benefit insurance has within ten years, when in supposed need of medical treatment, but with no specific disease, interviewed a physician and procured his advice, or has received from him a prescription or some remedy, he has consulted or been treated by a physician within the meaning of the interrogatory in his application, "Have you personally consulted a physician, been prescribed for, or professionally treated, within the past ten years?" and a negative answer made by him to such question is false.

A trial judge, in defining a certain term to the jury as requested by them, after instructing them that certain facts, if they find them to exist, constitute the thing defined by the term within the meaning of the law, may add, without charging them with respect to matters of fact, "and it is your duty so to find, whether the consequences may be as you would wish them to be, or otherwise."

At the trial of an action to recover benefit insurance, the presiding judge, in defining the term "prescription," as requested by the jury, instructed them that, "If

the insured went to a physician for the purpose of getting his aid, advice, or assistance as a physician in a difficulty under which he was then suffering, or supposed himself to be suffering, and the physician hearing what the insured had to say, as a physician, and for the purpose of relief or cure or aid or assistance, gave to the insured medicine, then it may be said that such a physician prescribed for him." *Held*, that this instruction did not constitute a charge upon the facts, within the meaning of the Pub. Sts. c. 153, § 5.

BILL IN EQUITY, filed in the Superior Court, to recover $2,500 on a certificate of membership in the defendant association, an Illinois corporation, issued to Pliny M. Cobb, for the benefit of his wife, Nellie L. Cobb. At the trial in the Superior Court, before *Hammond*, J., a jury co which issues were submitted answered the second issue in favor of the defendant, and the remainder in favor of the plaintiff; and the judge reported the case for the determination of this court. If certain rulings and instructions, to which the plaintiff excepted, were correct, the bill was to be dismissed; otherwise, the verdict upon the second issue was to be set aside and a new trial granted. The material facts appear in the opinion.

*H. M. Knowlton & G. E. Williams*, for the plaintiff.

*A. E. Avery, & W. C. Calkins* (of Illinois), for the defendant.

BY THE COURT. The subjoined opinion was prepared by Mr. Justice DEVENS, and was adopted as the opinion of the court after his death by the Justices who sat with him at the argument.

By the terms of his application, which is referred to and made a part of the benefit certificate issued to the insured, he warranted the answers to the questions propounded " to be full, complete, and true," and agreed that the answers and application should form the exclusive and only basis of the contract between himself and the defendant, and further agreed that, if " any misrepresentations or fraudulent or untrue answers " had been made, the contract should be null and void. The acknowledgment at the end of the application, which was subscribed by the insured, and which contains the agreement above referred to, controls and governs the answers to which it refers, nor does it seem important to determine whether they are to be treated as warranties which are to be literally complied with, or as representations only; as, if the latter, they were material to the risk, and were so made and treated by the parties.

Where one asserts that certain statements are true, and that, if not true, this fact shall avoid the policy, the question whether they were actually material is not important, as parties have the right to make their truth the basis of the contract. *Miles* v. *Connecticut Ins. Co.* 3 Gray, 580. *McCoy* v. *Metropolitan Ins. Co.* 133 Mass. 82. *Ætna Ins. Co.* v. *France*, 91 U. S. 510. *Powers* v. *North Eastern Life Association*, 50 Vt. 630. The case at bar differs obviously from those in which an applicant has averred that the answers made by him are true according to his best knowledge and belief, or has limited his statement by other similar words. Such answers, if accepted by the insurer, would render it necessary for it to prove that, as thus limited, they were untrue. *Clapp* v. *Massachusetts Benefit Association*, 146 Mass. 519.

The sixth question put to the applicant in form A of the application was, "Have you personally consulted a physician, been prescribed for, or professionally treated, within the past ten years?" To this question the insured answered, "No," and it has been found by the jury, upon the second issue submitted to them, that this answer was false. The plaintiff contended that such an issue should only be found against her in case the answer was intentionally false. In our view, the insured having made the truth of his statements the basis of his contract, it was sufficient for the defendant to show that this statement was actually untrue.

The plaintiff further contended, that the question referred to in the application should be construed as referring to a specific disease, and that if the insured had consulted or been prescribed for by a physician for a pain that did not amount to a disease his answer to this question would not prevent the plaintiff from recovering. The presiding judge declined to instruct the jury in accordance with this contention, and instructed them that if the insured, being as he supposed in need of a physician, went to one for the purpose of consulting him as to what was the matter with him, and had an interview, answering such inquiries as the physician deemed pertinent, receiving aid, advice, or assistance from him, that the insured consulted a physician within the meaning of the interrogatory; and further, that if they found that he went to a physician for the purpose of procuring

aid and assistance from the physician as such, and the physician prescribed a remedy, or treated him professionally, either by giving him a prescription or by administering hypodermic injections of morphine, (of which there was some evidence,) then he was professionally treated within the meaning of the interrogatory, or professionally prescribed for. The ruling appears to us correct. While the question whether the insured had a fixed disease, and what the disease was, might be an inquiry involved in considerable embarrassment, the question whether he had consulted a physician, or had been professionally treated by one, was simple, and one about which there could be no misunderstanding. Had it been replied to in the affirmative, the answer would have led to other inquiries. Indeed, the question which follows, which remained unanswered, is, "If so, give dates, and for what diseases." It is upon the existence of this latter question that the plaintiff founds an argument that it was necessary to show that the insured had some distinct disease permanently affecting his general health before it could be said that he answered this question untruthfully. But the scope of the question cannot be thus narrowed. Even if the insured had only visited a physician from time to time for temporary disturbances proceeding from accidental causes, the defendant had a right to know this, in order that it might make such further investigation as it deemed necessary. By answering the question in the negative, the applicant induced the defendant to refrain from doing this.

In *Metropolitan Ins. Co.* v. *McTague*, 20 Vroom, 587, it was held that where the applicant stated that he had not consulted a physician or been prescribed for by one, and such statement was shown to have been false by proof of a prescription received, there could be no recovery, although it appeared to have been given for a cold. The court say: "That representation did not aver a condition of health, or that it was requisite or proper to consult a physician. It averred that he had not consulted a physician or been prescribed for by a physician. The fact found contradicted this averment, whether the consultation and prescription related to a real disease or an apprehension of disease."

In the case at bar, after retiring to their room, the jury re-

turned into court with a request that the court would define the word "prescription." There was evidence in the case from three physicians tending to show that, on more than one occasion when he had consulted with them, they had administered hypodermic injections for the pain which he was suffering, and also given him medicine. The presiding judge instructed the jury fully as to the meaning of a "prescription," and stated that, "if the insured went to one of those physicians and received from him a medicine as a physician, for the purpose of assistance and relief in a difficulty under which he was then suffering or supposed to be suffering, then it is a prescription within the meaning of the law." The judge added: "And it is your duty as jurors so to find, . . . whether the consequences may be as you would wish them to be, or otherwise." The plaintiff excepted to the last paragraph, as a charge upon the facts, and the judge modified this, and said: "I will endeavor in this way to define a prescription, and let this definition stand for the definition objected to. If the insured went to a physician for the purpose of getting his aid, advice, or assistance as a physician, in a difficulty under which he was then suffering, or supposed himself to be suffering, and the physician, hearing what the insured had to say, as a physician, and for the purpose of relief, or cure, or aid, or assistance, gave to the insured medicine, then it may be said that such a physician prescribed for him." To this the plaintiff also objected, as a charge upon the facts, and contended that the jury should have been instructed that the word "prescription" was a word in common use, which they could define as well as the court. The latter instruction leaves clearly to the jury the inquiry whether the insured had gone to the physician and received from him aid, assistance, medicine, etc., in answer to his application. We cannot see that it has any element of a charge upon the facts. The definition of a "prescription" was entirely correct, and, even if a word in common use was explained, there was no reason why the judge should not define it in answer to the request, if he gave the jury an accurate definition.

The plaintiff also insists that the last clause of the definition as first given was a charge upon the facts. It is perhaps sufficient to say that it was clearly withdrawn, and the latter definition given in place of it. We do not, however, consider that

the last clause of the first definition was a charge upon the facts within the meaning of the Pub. Sts. c. 153, § 5.   The judge had defined the word as to the meaning of which they had inquired, and submitted to them in a condensed way the evidence bearing upon the issue which they were to determine.   Certain facts, if they find them to exist, he informs the jury, will make a prescription by a physician within the meaning of the law. He then adds: "And it is your duty as jurors so to find; and it is your duty so to find, whether the consequences may be as you would wish them to be, or otherwise."   Although the last clause is a caution to the jury to disregard the consequences which may follow their decision, there is no reason why a judge, when he deems it proper to do so in the trial, may not caution the jury not to be swayed by sympathy, prejudice, or passion, and direct them to be governed in their finding by the facts as they exist, without regard to the results that may follow therefrom.

On the back of the certificate, there is, among many other conditions, one which recites that the contract shall be subject to and construed only according to the laws of Illinois. The plaintiff relies on the case of *Continental Ins. Co.* v. *Rogers,* 119 Ill. 474, as being the law of Illinois.   In this case it is said that, as a general rule, where the application for insurance on a person's life is expressly declared to be a part of the policy, and such statements are warranted to be true, they will be deemed material, whether actually so or not.   But as a qualification, where a statement in a policy of insurance that the answers, statements, etc. in the application are warranted by the insured "to be true in all respects," is followed by the further statement "that if this policy has been obtained by or through any fraud, misrepresentation or concealment, said policy shall be absolutely null and void," which fraud relates to the answers to the questions in the application, erroneous answers not material to the risk, honestly made in the belief that they are true, will not be so far binding on the insured as to present any obstacle to his recovery.   The case is not decided on this point, but on the ground that, whether answers are warranties or representations, the burden of proving their falsity is upon the defendant, a proposition not controverted by the defendant in the case

at bar. It is only on this last ground that the case can be held an authority for the law of Illinois.

In the case at bar, the policy is declared to be avoided not only by misrepresentations and fraudulent answers, but by those which are untrue; and the question which is found to have been untruly answered must be deemed to have been made by the parties one material to the risk.        *Bill dismissed.*