Argued December 10, 1908, decided January 19, 1909.

BEARD v. ROYAL NEIGHBORS OF AMERICA.

[99 Pac. 83.]

INSURANCE — MUTUAL BENEFIT INSURANCE — WARRANTIES — EFFECT OF FALSITY.

1. Where the truth of the answers in an application for a benefit certificate is made a condition precedent to its validity, negative answers to questions in the application as to whether applicant had consulted a physician, and had had la grippe, which answers are untrue, avoid the certificate, though the predisposing cause of the applicant's death may have had no connection with la grippe, and it may have been a very light form of la grippe.

EVIDENCE — ADMISSIONS — MUTUAL BENEFIT INSURANCE — PROOF OF DEATH.

2. Where, in an action on a benefit certificate, the defense is the falsity of applicant's answer that she never had la grippe, the proofs of death are admissible in evidence to show, as an admission by the beneficiary, that the applicant did have la grippe.

INSURANCE—MUTUAL BENEFIT INSURANCE—WARRANTIES—"CONSULTATION" WITH PHYSICIAN—WHAT CONSTITUTES.

3. Where a benefit certificate is issued on applicant's warranty that she had not consulted a physician, a call made by a physician at the instance of applicant's husband is a "consultation" within the meaning of the warranty, if she accepts his services and receives aid from him.

INSURANCE—MUTUAL BENEFIT INSURANCE—ACTION ON CERTIFICATE—QUESTIONS OF LAW OR FACT.

4. In an action on a benefit certificate, the truth or falsity of applicant's answers in the application are questions of fact for the jury; but, where the issue joined as to the falsity of such answers has been sustained by defendant

by competent and relevant testimony, which has not only been uncontroverted by plaintiff as to its material elements, but is confessed by him in person upon the witness stand, the question becomes one of law for the court.

From Douglas: JAMES W. HAMILTON, Judge.

Statement by MR. COMMISSIONER SLATER.

This is an action to recover the amount of a benefit certificate issued by the defendant association to Nancy C. Beard, wife of plaintiff. Application for issuance of the certificate was made August 22, 1903, and the certificate was issued to, and received and accepted by, the insured on November 13, 1903. By its terms it was issued and accepted upon certain warranties, conditions, and agreements therein expressed, to the general effect: (1) That the application and medical examination are a part of the contract, and that the literal truth of such application, and each and every part thereof, shall be held to be a strict warranty, and to form the only basis of the liability of the society to the member applying for the benefit, and to the beneficiary, the same as if fully set forth in the certificate; (2) that should said application, and each and every part thereof, not be literally true, then the certificate as to the member or beneficiary shall be null and void; (3) that the certificate was issued in consideration of the warranties and agreements made in the application; and (4) that if the application shall be found in any respect untrue, then the certificate shall be void and all rights under it forfeited. Nancy C. Beard died June 8, 1905, and proof thereof was made to the defendant on June 9, 1905, by Frank M. Beard, the beneficiary named in the certificate, who demanded payment of the amount therein specified, and, the company failing to pay, he brought this action to recover the same.

The answer denies generally all of the material averments of the complaint, except that it expressly admits the issuance of the certificate and the terms thereof, as stated in the complaint; that plaintiff is named therein

as the beneficiary; that due and timely proofs of the death of Mrs. Beard were made and furnished to the defendant, but the defendant denied any and all liability to plaintiff by reason of the certificate. As an affirmative defense there are set forth the terms of the application, which are in part to the general effect that the applicant agreed that the application should be the sole basis of her admission to the order, and of the benefit certificate to be issued, and that any untrue statement or answer made in the application or to the examining physician, or any concealment of facts, intentional or otherwise, should forfeit her rights, and that of her beneficiary, to any and all benefits therein. It also contains this provision:

"That I have verified each of the foregoing answers and statements, numbered from 1 to 33, both inclusive, and adopt them as my own, whether written by me or not, and declare and warrant that they are full, complete, and literally true, and I agree that the exact truth of each shall be a condition precedent to any binding contract."

There are then set forth a number of interrogatories contained in the application and the answers made thereto by Mrs. Beard, among which are these:

"(18) Have you within the last seven years consulted any person, physician, or physicians in regard to personal ailment? No. If so, give dates, ailment, length of illness, and person, physician or physicians' name and address."

And—

"(25) Have you ever had any * * of the following diseases * * la grippe? No."

It is then averred that each of these answers are untrue, in that she had had la grippe, and that within seven years preceding the date of her application she had consulted a physician in regard to a personal ailment.

The affirmative matter of the answer was denied by the reply. The cause being at issue, a trial was had before a jury. At the close of the taking of testimony defendant moved for a directed verdict in its favor, which was denied by the court. A verdict for plaintiff having been returned, judgment thereon was accordingly entered, from which defendant has appealed.

REVERSED.

For appellant there was a brief over the names of Messrs. *Fullerton & Orcutt,* with an oral argument by *Mr. Albert N. Orcutt.*

For respondent there was a brief with oral arguments by *Mr. John T. Long* and *Mr. William W. Cardwell.*

Opinion by MR. COMMISSIONER SLATER.

1. The motion for a directed verdict is based upon the averment that the answer given by Mrs. Beard to the eighteenth interrogatory, contained in her application, was not true, and that the evidence conclusively shows that she had consulted a physician regarding a personal ailment within seven years prior to making such answer. The proof on the part of the defendant consisted, first, of an offer of the application, which showed a negative answer to that inquiry, the genuineness of the signature of Mrs. Beard thereto being admitted by plaintiff when called upon by defendant to testify in regard to that matter; and, second, of an offer of the proofs of death, which it is claimed contain an admission against plaintiff's interest to the effect that the answer given by Mrs. Beard to the eighteenth interrogatory was not in fact true. The proof consisted in part of an affidavit, made on June 26, 1905, by Dr. K. L. Miller, who, it appears therefrom, attended Mrs. Beard in her last illness, in which he stated that she died of tuberculosis, the predisposing cause of which he did not know. But he stated that following an attack of la grippe she had a hacking cough; that he had been

the medical attendant or adviser of the deceased for three years, and had treated her two or three years prior thereto, for four or five days, for the disease called "la grippe." Further, to explain his attendance upon deceased as her physician, Dr. Miller testified in person, at the instance of defendant, that he was by profession a physician and surgeon, and had practiced his profession at Roseburg since 1882, and was acquainted with the deceased during her lifetime. In answer to the question whether or not he was ever consulted by Nancy C. Beard in her lifetime as a physician and surgeon he stated that he was called to see Mrs. Beard early in the fall of 1902; that from the symptoms he discovered at the time he considered it a mild case of la grippe; that he gave her one prescription, and never saw her any more during that sickness. On cross-examination he stated that at that time (1902) he was requested to attend upon deceased by her husband, the plaintiff, and in response to the following cross-interrogatory: "She never consulted you at all; you were sent there by her husband?" he replied, "Of course she consulted me after I got there, so far as she had anything to do with it." In response to further interrogation, he stated that he informed the patient that her trouble was "just the la grippe in a mild form"; the symptoms being a cold in the head, accompanied with pain in the limbs and head.

An attempt was made by counsel to have the witness declare that the ailment of Mrs. Beard, for which she was then treated, was "what ordinarily would be called a bad cold," but the witness replied:

"Well, of late years we term it 'la grippe.' We used to call it 'influenza.'"

On being urged to fix more definitely the date of his attendance upon the deceased, the witness stated that he could not fix the exact date, but that it was in August or September, 1902, and that he fixed this date from

the written prescription on file with the druggist.    In rebuttal plaintiff testified in part, in his own behalf, as follows:

"I went home one day at noon, and Mrs. Beard was laying down, feeling bad.    She seemed to have quite a cold in her head and headache and kind of fever, and I came back uptown and met Dr. Miller on the street, and I told him that Mrs. Beard was feeling bad, and I wished he would go down and see what was the matter. So he went down, and when he came back he gave me a prescription, and I asked him, I think, at the time, what was the matter with her.    He says, 'Oh, a severe cold, or la grippe, or something of that kind,' and he says, 'She will be all right in a short time,' or something to that effect, and I says, 'If there is anything serious in any way, go ahead and straighten her out.'    And I guess he never considered it that way, for he never went back any more—never asked me any more about it."

That the doctor "gave one little prescription, and that was the end of it."    He gave further testimony to the effect that his wife never had any symptoms of consumption prior to the time she made application for insurance in the order, but that the first he ever knew that she was afflicted with such disease was on the 10th day of December, 1904, which followed a severe cold contracted by her about that time; that when she made application she was strong and healthy.    Other testimony was offered by plaintiff through Dr. Hoover, who was the examining physician of the defendant association at the time of Mrs. Beard's application, tending to show that his examination of the applicant was thorough, and that, relying upon his report made in this case, he testified that there were no symptoms or evidence of any trouble of the lungs at that time.

2. No evidence, however, was offered by plaintiff tending in any degree to controvert the truth of the statements made by Dr. Miller in the death proofs, or in his evidence in person to the effect that the deceased early in the fall of 1902, had consulted him as a physician

regarding a personal ailment, and that at that time he had treated her for the disease called la grippe. Under such state of the record there is no conflict in the evidence or dispute as to the essential facts above stated; and, as we view the law, it was the duty of the court to direct a verdict in favor of the defendant when so requested by it. *Coffin* v. *Hutchinson,* 22 Or. 554 (30 Pac. 424); *Crawford* v. *Hutchinson,* 38 Or. 578 (65 Pac. 84). By an express agreement of the parties the statements contained in the application of Nancy C. Beard for a benefit certificate were made material to the consideration thereof, and warranties on her part, and the literal truth of each of them is a necessary prerequisite to a recovery. Bacon, Benefit Soc., § 197; *Buford* v. *N. Y. Life Ins. Co.,* 5 Or. 334; *Christman* v. *State Ins. Co.,* 16 Or. 283 (18 Pac. 466). Objection was made by plaintiffs to the reception in evidence of the proofs of death, when offered by the defendant, as being irrelevant and immaterial; but it has been generally held that, being an admission by the beneficiary, they are admissible, and that the effect thereof is to make a *prima facie* case of the truth of the facts stated therein, as against the beneficiary and in favor of the society. 3 Elliott, Ev., § 2387; Bliss, Life Ins., § 265; *Ins. Co.* v. *Newton,* 22 Wall. 32 (22 L. Ed. 793); *Home Benefit Ass'n* v. *Sargent,* 142 U. S. 691 (12 Sup. Ct. 332: 35 L. Ed. 1160); *Grand Lodge* v. *Wieting,* 168 Ill. 408 (48 N. E. 59: 61 Am. St. Rep. 123). And by some authorities it is even held that, in the absence of evidence to contradict the statements in the proofs of loss, the *prima facie* case thus made becomes conclusive. 3 Elliott, Ev., § 2387.

3. The interrogatory "Have you, within the last seven years, consulted any person, physician, or physicians in regard to personal ailment?" was answered by the applicant in the negative, while the next inquiry "If so, give dates, ailment, length of illness, and person, physician or physicians' name and address" remained

unanswered.   The truth of the answer given is directly impeached by the affidavit of Dr. Miller in the proofs of death.   The application was made August 22, 1903, while Miller's affidavit was made June 26, 1905.   He there says that he had been the medical attendant or adviser of the deceased for three years, and that two or three years prior to that time he had .treated the deceased four or five days for the disease known as la grippe.   When called to testify in person, he evidently attempts to minimize the gravity of the case by saying that early in the fall—August or September of 1902— he was called once to see Mrs. Beard; that he found her suffering with a mild case of la grippe, and gave her one prescription.   This much is expressly admitted by the plaintiff when testifying in his own behalf, although he attempts further to palliate the admission by saying that he sent Dr. Miller to the house to see Mrs. Beard, and that the latter did not seek the advice of the doctor. But it is testified by Dr. Miller that when he arrived at the house she consulted with him regarding her trouble, and that he prescribed for her ailment.   It is not material to the issue to be tried in this case whether Mrs. Beard's ailment was a serious or mild form of the disease known as la grippe.   So long as it is admitted that she had such a disease and was treated for it by Dr. Miller, it cannot be gainsaid that she consulted a physician in regard to a personal ailment.

In *Cobb* v. *Covenant Mut. B. Ins. Co.,* 153 Mass. 176 (26 N. E. 230: 10 L. R. A. 666: 25 Am. Rep. 619), the presiding judge at the circuit had instructed the jury that, if the insured, being, as he supposed, in need of a physician, went to one for the purpose of consulting him as to what was his ailment, and had an interview answering such inquiries as the physician deemed pertinent, receiving aid, advice, or assistance from him, the insured consulted a physician within the meaning of the interrogatory.   On appeal the Supreme Court

approved this ruling. The mere fact that Dr. Miller was not sought out by Mrs. Beard, with a view of consulting him as a physician, but instead, was met on the street by Mr. Beard, who advised him of his wife's illness, and directed him to go to the house and attend her, does not prevent it from being considered a consultation by her with a physician. She approved and adopted the act of her husband as her own by accepting the services of the physician, advising him of her symptoms, and receiving aid from him, thereby making the act of her husband in summoning the physician her own act, if that were necessary—which we think was not—to constitute a consultation of a physician. The material part of the facts constituting consultation, within the meaning of this contract is having an interview with him, acquainting him with the nature of the ailment, and accepting and receiving aid, advice, or assistance from him.

4. Some effort was made by counsel to parry the effect of these admissions by attempting to show that the statements on which the breach is predicated are in no way material to the risk, and that the admitted personal ailment, in relation to which Mrs. Beard consulted Dr. Miller in August or September, 1902, could not have been the predisposing cause of her last illness. But from the general principle that the materiality of the fact warranted to be true is wholly unessential in a defense based upon a breach thereof, it necessarily follows that when it is shown that there is a breach of warranty upon which a policy is based, the policy is avoided, though the statement is in no way material to the risk. Bacon, Benefit Soc., § 197; *Buford* v. *N. Y. Life Ins. Co.,* 5 Or. 334; *Christman* v. *State Ins. Co.,* 16 Or. 283 (18 Pac. 466) ; *McDermott* v. *M. W. of A.,* 97 Mo. App. 636 (71 S. W. 833) ; *Hoover* v. *Royal Neighbors,* 65 Kan. 616 (70 Pac. 595).

Again, it is urged by plaintiff that the truth or falsity of answers in the application are questions of fact for the jury to decide, and not for the court. That this is so in the first instance cannot be questioned; but, when the issue joined as to the falsity of such answers has been sustained by the defendant by competent and relevant testimony, which has not only been uncontroverted by plaintiff as to its material elements, but is confessed by him in person upon the witness stand, there is no dispute as to the facts; and, under the rule stated by Mr. Chief Justice STRAHAN in *Coffin* v. *Hutchinson*, 22 Or. 554 (30 Pac. 424), the question becomes one of law for the court.

The court erred in refusing to direct a verdict for the defendants, and the judgment should be reversed, and a new trial ordered.   REVERSED.