## FRATERNAL AID UNION v. MILLER.

No. 13607—Opinion Filed March 3, 1925.

**1. Insurance—Life and Disability Policies —Answers in Application as Warranties.**

Where a party makes application to an insurance carrier for insurance against death or disability, and it is agreed in the application that the answers made to questions asked in the application are warranties of truthfulness, and by the terms of the

contract of insurance the application is made part thereof, and the policy of insurance is based upon the application, the answers made to questions asked in the application constitute warranties of truthfulness, and untruthful answers would have the effect of rendering the policy of insurance void, and an action cannot be maintained thereon for death or disability resulting directly or indirectly from conditions which by the answers are warranted not to exist.

**2. Same—Misstatements by Applicant as to Pregnancy.**

Where a policy of life insurance is issued upon an application which, by the terms of the instrument, is made a part of the contract of insurance, and the answers to questions asked in the application are made warranties of truthfulness, and the insured further agrees for herself and for her beneficiary that the policy of insurance shall be void if any of the answers are untrue, and the question is asked: "Are you pregnant?" and is answered in the negative, the answer constitutes a warranty that the applicant is not pregnant at the time of making the application: and untruthfulness of the answer will render the policy of insurance void if death results directly or indirectly from a state of pregnancy existing at the time of making the application, and an action upon the policy cannot be maintained

**3. Same—Defense to Action on Policy.**

Where, in such a contract of insurance, the insured waives all benefits provided by the laws of the order in case of death or disability resulting directly or indirectly from existing pregnancy, the risks incident to existing pregnancy are excepted from the contract, and as against death or disability resulting from existing pregnancy there is no contract of insurance; and such waiver is a complete defense where the death or disability results from pregnancy existing at the time of making the application.

(Syllabus by Shackelford, C.)

Commissioners' Opinion, Division No. 4.

Error from District Court, Tulsa County; W. B. Williams, Judge.

Action by Jessie G. Miller against the Fraternal Aid Union, upon an insurance contract issued by defendant to Ruby Pearl Miller, in which the plaintiff was made beneficiary. Judgment for plaintiff, and defendant appeals. Reversed with directions.

Mason & Honnold and M. H. Merrill, for plaintiff in error.

F. E. Riddle and F. G. Viger, for defendant in error.

Opinion by SHACKELFORD, C. The

plaintiff in error, The Fraternal Aid Union, defendant below, will be referred to herein as the defendant, and the defendant in error, Jessie G. Miller, plaintiff below, as the plaintiff.

On the 24th of April, 1919, the defendant issued a life insurance policy to Ruby Pearl Miller in the sum of $2,000, payable to Jessie G. Miller, her husband, as beneficiary, in the event of her death. Ruby Pearl Miller died on the 12th of June, 1919. For reasons that will hereinafter appear the defendant declined to pay the policy. The plaintiff, named as beneficiary in the policy, filed his petition in the superior court of Tulsa county on the 7th of August, 1920, suing the defendant for the amount fixed as payable upon the death of the insured. The application for membership and for benefit certificate, the medical examination, and the policy of insurance are all attached to and made a part of the petition. The defendant answered, admitting its corporate capacity. the issuance of the benefit certificate, the death of Ruby Pearl Miller, the plaintiff's relationship to her, and refusal to pay the insurance provided in the certificate. Further answering, the defendant pleaded that the party to whom the certificate was issued, when applying for membership, and in answer to the question, "Are you pregnant", answered "no", when in truth and in fact the applicant was at that time pregnant, and the answer so made was false; and that the applicant contracted and agreed that her statements and answers made for the purpose of becoming a member of the order and having issued to her a benefit certificate were true statements and warranties; and for further defense pleaded that in the contract the applicant for membership waived all benefits under the laws of the order in case of death or disability resulting from pregnancy existing at the time of making application, in the following language:

"I hereby waive all benefits paid under the laws of the order, in event of my death or disability resulting directly or indirectly from my being pregnant at this time"

—and that the death of Ruby Pearl Miller was caused directly or indirectly from pregnancy existing at the time the application was made, and the contract of insurance issued and delivered; and that the member was not insured against death resulting from existing pregnancy; that death from existing pregnancy was excepted from the contract; and alleges that the death of Ruby Pearl Miller was caused directly or indirectly from pregnancy existing at the time ap-

plication for membership was made by her. A copy of the constitution of the aid union is attached as an exhibit to the answer and made a part thereof. The reply of plaintiff denies generally every allegation of affirmative defense, and specifically denies that the insured made any false or fraudulent answers or representations to secure the benefit certificate, and further alleges that if the answers given were inaccurate and untrue that the matters were well known to the defendant and the certificate was issued with full knowledge thereof, and the monthly dues accepted by the defendant.

The cause was transferred to the district court of Tulsa county and tried to a jury on the 28th of March, 1922, resulting in a verdict and judgment for the plaintiff for the principal sum fixed in the policy of insurance. The defendant prosecutes appeal and submits its assignments of error under the following propositions:

(1) "The trial court erred in overruling the motion of the defendant to direct a verdict in favor of the defendant and against this plaintiff."

(2) "Existing pregnancy may be made an excepted risk in a contract of life insurance; an agreement by the applicant waiving all beneficial rights if death resulted directly or indirectly from pregnancy existing is valid."

(3) "Error in the instructions of the court."

(4) "Error in the instructions of the defendant's requested instructions."

Upon the trial of the cause it was shown that Ruby Pearl Miller had applied to the local lodge of The Fraternal Aid Union for membership in the order or society, passed the medical examination, and a benefit certificate of insurance was issued and delivered to her insuring her life for the sum of $2,000, and that the plaintiff, Jessie G. Miller, her husband, was made beneficiary in the policy of insurance, and it was dated April 24, 1919; and that Ruby Pearl Miller, the insured member, paid two monthly premiums and died on the 12th of June, 1919. The proof offered conclusively shows that her death was caused either directly or indirectly from pregnancy which existed at the time she made her application for membership in the order. The application for membership, the medical examination, the insurance policy, and the constitution and by-laws of the order were all introduced in evidence. In the benefit certificate and as a part of the contract between Ruby Pearl Miller and the defendant, is the following recital:

"This certificate is based upon the application of the member to whom the same is issued, and the medical examination accompanying the same, and said application with said medical examination, the articles of incorporation, the constitution and laws of the association now and hereafter adopted and this certificate constitute the agreement between The Fraternal Aid Union and said member," etc.

The application for membership is divided into two parts or sections, both signed by Ruby Pearl Miller. In the first part is the statement:

"I hereby apply for membership in Stella Lodge No. 638 of The Fraternal Aid Union and a Benefit Certificate upon my life in the sum of $2,000. Plan of certificate, whole life. Payments to be made monthly, and warrant my answers to the following questions to be literally true."

Here follows the personal history of the application, signed by her. In the second part follows many questions as to the personal conduct and intimate history of the applicant, and as to her physical condition; and among other questions asked is the following question and answer thereto: "Are you pregnant? No." Then, after a few other questions and answers, not necessarily to set out, is the following recital:

"I hereby waive all benefits paid under the laws of the order, in event of my death or disability resulting directly or indirectly from my being pregnant at this time."

Then, after several paragraphs not necessary to quote here, is the following agreement:

"I hereby agree and declare that all statements and answers made by me to obtain membership are warranties and in all respects full, literally true, and complete; * * * I hereby agree for myself and my beneficiary or beneficiaries if any one or more of such answers or statements are false, untrue, or fraudulent, the benefit certificate which may be issued to me shall be null and void and of no effect, and all payments made on account thereof shall be forfeited."

This part of the application is also signed by Ruby Pearl Miller. The examining physician reporting the medical examination of the applicant was not called as a witness, and the medical examination contains no question to be answered by the medical examiner with reference to the applicant's condition of pregnancy, or absence of such condition. The doctor who was called in to take care of Mrs. Miller in her confinement testified to being called and upon examination found her in labor, and that she gave birth to a child which was developed to an

extent that in his judgment it had passed about an eight months' period of gestation; and that the medical examiner reporting the medical examination on the application for membership would have found that Mrs. Miller was pregnant at the time of preparing his report, if he had made a complete examination. He further testified to the effect that in a few days after the birth of the child, Mrs. Miller succumbed from the effects of puerperal or child-bed fever, coupled with some other complications from which she would not have died but for the childbirth.

The defendant makes two contentions, either of which, it insists, should reverse the judgment if the contentions made are correct. These are (1) that the insured, Ruby Pearl Miller, warranted the truthfulness of her negative answer to the question as to whether she was pregnant at the time of making the application for membership in the association; and (2) that under her waiver, death resulting from existing pregnancy was excepted from the terms of the policy. and the contract of insurance did not insure against death caused directly or indirectly by existing pregnancy.

There is no contention made by the plaintiff that Mrs. Miller did not die from the direct or indirect effects of pregnancy, existing at the time the application for membership was made by her. But the plaintiff contends that the warranty contended for by defendant does not apply to Mrs. Miller's answer that she was not pregnant, but has reference to the answers made in the first part of her application, and bases this contention upon the peculiar wording of the agreement, and points out that the language used is "that all statements and answers made by me to obtain membership are warranties", and that the first part of section of the application was for membership and the second section of the application was the application for the benefit certificate, and the warranties do not apply to the answers in the second part of the application, but refer to answers given in the first, which was made for the purpose of becoming a member, as distinguished from a holder of a benefit certificate; or at least, the instruments required to be signed are uncertain and ambiguous in their meaning, and should be construed most strongly against the defendant, since it furnished the forms. We cannot agree that the statement in the second section or part was a warranty of the truthfulness of the answers in part one alone. nor can we agree that the meaning of the application is uncertain

and ambiguous. Part one shows upon its face that it is an application not only for membership, but is an application for a benefit certificate insuring the life of the applicant. The language used is:

"I hereby apply for membership in Stella Lodge No. 638 of The Fraternal Aid Union, and a benefit certificate upon my life in the sum of $2,000."

The very first sentence not only applies for membership in the order, but also for a benefit certificate. Not only is that true, but there is also the statement by the applicant, "and warrant my answers to the following questions to be literally true." And then follows the questions and answers to part one. Thus the truthfulness of the answers in part one is warranted by the express terms of part one itself. The truthfulness of the answers given in part one being warranted therein, it becomes certain that when a warranty of truthfulness is made in part two, such warranty must refer to the answers made in part two, and it is in part two that the applicant answered the question as to her pregnancy. And, to make it more certain about the effect of the warranty of truthfulness being applied to answers to questions propounded in part two, Mrs. Miller not only agreed that the answers were warranties of their truthfulness, but she further agreed that:

"If any one or more of such answers or statements are false. untrue or fraudulent, the benefit certificate which may be issued to me shall be null and void and of no effect"

—and expressly binds herself and her beneficiary or beneficiaries to this condition. The agreement that the answers given are warranties, and that if the answers are false the benefit certificate is void, and that she binds herself and her beneficiaries, are all contained in the same paragraph in part two. We think the fair import of the language used is to the effect that in signing part two of the application, Mrs. Miller agreed that her negative answer to the question as to whether she was pregnant was a warranty of the truthfulness thereof, and agreed that the benefit certificate should be void and of no effect if her answer was false, and bound not only herself, but her beneficiary thereto. The whole application shows upon its face that it was made for the purpose of having issued to her a benefit certificate such as was issued. We have carefully considered the entire application in the light of plaintiff's reasoning with reference thereto, and have concluded that there is no uncertainty or ambiguity about

it, and that Mrs. Miller made the application for the purpose of having issued to her a benefit certificate, and that she contracted and agreed with defendant that her answers to the questions propounded in the application were warranties of the truthfulness thereof, including her negative answer as to whether she was pregnant; and that she further contracted and agreed with the defendant that if her negative answer to the question as to whether she was pregnant was untrue, the certificate should be void; and that she agreed to be bound thereby and that her beneficiary should be bound by the agreement.

The contention made by the plaintiff with reference to the agreement to waive liability in case of death from existing pregnancy is that such waiver does not apply to the matters contained in the benefit certificate, but applies to benefits provided for members under the laws of the order, as distinguished from the benefit certificates, and bases this contention upon the language used, which, it is claimed, constituted a waiver. The language of the waiver relied upon is:

"I hereby waive all benefits paid under the laws of the order in event of my death or disability resulting directly or indirectly from my being pregnant at this time."

So, the contention is made on the part of the plaintiff that since the language is that "all benefits paid under the laws of the order" are waived, it has no reference to and does not waive the benefits provided in the insurance contract; or at least the language is of doubtful construction and should, for that reason, be resolved against the defendant. We cannot agree with this contention. It is apparent from an examination of the record here presented that the chiefest of all purposes for which the defendant aid union was organized was to issue benefit certificates of insurance. The benefits provided for in the certificate of insurance are based upon and authorized by the laws of the order, and unless the issuance of the insurance certificates is authorized by the laws of the order, perhaps as a matter of law, the issuance of such certificate of insurance would be wholly unauthorized. A waiver of all benefits provided by the laws of the order must necessarily mean a waiver of benefits provided in the insurance policy, since no benefits can be provided in the insurance contract that is not authorized by the laws of the order. The benefit certificate of insurance is evidentiary only of the benefits provided by the laws of the order which the insured is

contracting for and paying for, and no more. But, this is not the only reason why we think the waiver agreed to applies to the benefits provided for in the insurance policy. When the waiver is taken into consideration together with the agreement made by Mrs. Miller that the policy of insurance should be void if her answers were false, it would seem there could be no doubt. For the purpose of bringing the portions of the agreement together which we think destroys any contention that the waiver does not apply to the benefit certificate, we will again quote the language used:

"I hereby waive all benefits paid under the laws of the order, in event of my death or disability resulting directly or indirectly from my being pregnant at this time. *** I hereby agree for myself and my beneficiary or beneficiaries that if any one or more of such answers or statements are false, untrue or fraudulent, the benefit certificate which may be issued to me shall be null and void and of no effect."

Putting these two statements together there seems to be no doubt that Mrs. Miller was agreeing to warrant that her negative answer to the question as to whether, at the time, she was pregnant, and that in case she should be pregnant she was agreeing to waive the benefits provided for in the laws of the order and as contracted for in the benefit certificate. It appears with certainty that the defendant did not intend to contract and agree with Mrs. Miller to insure her against injuries, disability, or death resulting either directly or indirectly from pregnancy existing at the time the application was made. The effect of the contract of insurance is, in substance, this: Mrs. Miller agreed with the defendant that her negative answer constituted a warranty of the truthfulness of her answer; and in case the answer was untrue, the insurance policy should be void; and in the event she was pregnant then she agreed to waive the insurance in case of disability or death resulting directly or indirectly from the existing pregnancy. And, since the evidence adduced at the trial establishes that Mrs. Miller was pregnant at the time she made the application for membership and for the benefit certificate, and also establishes, and it is undisputed, that her death resulted either directly or indirectly from an existing pregnancy, the question arises as to whether the contract should be enforced as the parties intended to make it. In other words, should the court enforce the warranty as agreed to be made: and enforce the waiver as agreed to be made?

In *National Council Knights and Ladies*

of Security v. Owen, 47 Okla. 464, 149 Pac. 231, a similar question as to a warranty of the truthfulness of answers given was before this court. In the trial of the cause defendant had requested an instruction as follows:

"The court further instructs the jury that, if you find from the evidence in this case that any one or more of the statements or answers contained in the application of Edward G. Owen for the policy of insurance or beneficiary certificate issued to him by the defendant fraternal order in pursuance of said application were false, then in that event your verdict should be for the defendant, regardless of whether the said statements and answers. or any one of them, was material or immaterial, and regardless of whether or not the said Edward G. Owen knew of the falsity of said statements and answers or any one of them at the time it was made."

The court, in passing upon the requested instruction, said:

"It will thus be seen that by the terms of the contract the parties have stipulated that the answers and statements both in the application and answers made to the medical examiner are true in all respects, and each and every part thereof shall be held to be a strict warranty. While it is true that warranties are not favored in the law, yet, in a case where the language of the contract is plain and unequivocal, the court cannot refrain from giving to the contract of the parties the meaning which its plain and unambiguous language imports and the question of their materiality does not enter into the case, for the parties by their contract have made them material. The instruction given, in the absence of any allegation or proof of waiver, as applied to the terms of the contract in question, we think, does not correctly state the law; and the parties have expressly stipulated that, if said application and medical examination are not true in all respects. and each and every part thereof, the certificate shall be void, and by its terms, if any of the statements therein contained are untrue, the same will render the certificate void, and the instruction asked should have been given. Eminent Household Col. Woodmen v. Prater, 24 Okla. 214, 103 Pac. 558, 23 L. R. A. (N. S.) 917, 20 Ann. Cas. 287; National Union v. Kelley, 42 Okla. 98, 140 Pac. 1157; Jeffries v. Mut. Life Ins. Co., 22 Wall. 47, 22 L. Ed. 833; Aetna Life Ins. Co. v. France, 91 U. S. 510, 23 L. Ed. 401; 3 Cooley's Briefs on Ins., 1950; 1 Bacon's Benefit Societies, sec. 197 and cases cited; Beard v. Royal Neighbors of America, 53 Ore. 102, 99 Pac. 83, 19 L. R. A. (N. S.) 801, 17 Ann. Cas. 1199; Hoover v. Royal Neighbors of America, 65 Kan. 616, 70 Pac. 595; Kelly v. Life Ins. Co., 113 Ala. 453, 21 South. 361; Cobb v. Covenant Mut. Ben. Ass'n.. 153 Mass. 176, 26 N. E. 230, 10 L. R. A. 666, 25 Am. St. Rep. 619; Baumgart v. M. W. A., 85 Wis. 546, 55 N. W. 713."

In Eminent Household of Columbian Woodmen v. Prater, 24 Okla. 214, 103 Pac. 558, it appears the question was asked in the medical examination: "Q. Have you ever had spitting or coughing of blood? A. No." It was agreed in the contract that the answers made should constitute warranties of their truthfulness and the evidence taken in the trial showed that the answer given to the above questions was false and untrue. This court, in discussing the effect of the agreement to warrant the truthfulness of the answer given, and the effect of the untruthfulness of the answer as shown by the testimony, said:

"*** But in the case at bar the application begins with the following sentence: 'I hereby make appliaction for beneficial membership and warrant the following statements and the answers to the "Worthy Physician" on the reverse side hereon to be true and accurate. and agree that they shall constitute the basis for the covenants.' The answer of the applicant to the worthy physician which defendant claims to be false was among her answers to the physician, and contained on the reverse side of the application. The policy of insurance provides: 'This covenant is executed in consideration of the warranties made in the application of this guest and of compliance on the part of this guest with the constitution and by-laws of this irate nity now existing or as hereafter legally amended, all of which and the application of this guest, are a part of this covenant. * * *'

"By reference in her application to answers made on the reverse side thereof to the worthy physician, and by agreeing in the application that such answers should constitute the basis of the covenant, insured made them a part of her application, and by the terms of the policy and the acceptance thereof by her, they became a part of the contract of insurance, and she thereby warranted that her answer to the question whether she had ever spit or coughed up blood was 'true and accurate.' ***"

"The application specifically warrants the answers of applicant to the physician, and specifically agrees that such answers shall form the basis of the covenant, and the policy makes the application a part thereof. It is unnecessary for us to discuss whether the untrue answers to the questions of the worthy physician in controversy are material or immaterial, for the contract had made the applicant's answers her warranties. A statement warranted to be 'true and accurate' if untrue, will prevent the policy from attaching as a contract of insurance, without regard to whether the statement is material or immaterial; and, where there

has been a breach of a warranty, the policy is void, though the statement upon which the breach of warranty is predicated is in no way material to the risk. Cooley's Briefs on Insurance, p. 1950; Hoover v. Royal Neighbors, 65 Kan. 616, 70 Pac. 595; Cobb v. Mut. Benefit Ass'n, 153 Mass. 176, 26 N. E. 230, 10 L. R. A. 666, 25 Am. St. Rep. 619; Kelly v. Life Ins. Clearing Co., 113 Ala. 453, 21 South. 361."

In Knights & Ladies of Security v. Grey, 70 Okla. 79, 172 Pac. 933, the contract contained an agreement that the answers to certain questions asked should constitute warranties. The court said:

"We are of the opinion that the representations by the insured that he had never applied for membership in the Knights and Ladies of Security or any other life insurance company, or association or society, and been rejected, considered in connection with the subsequent question and answer, and with the whole context of the application, constituted a warranty, and, if untrue, was sufficient to render the policy void. An instruction to cover this view of the question was asked by plaintiff in error and refused. This was error."

In National Union v. Kelley, 42 Okla. 98, 140 Pac. 1157, the agreement to warrant the truthfulness of answers given to questions propounded was before this court, and the court said:

"We think it clear that these answers were warranties, and, if untrue, the policy is void. Eminent Household of Columbian Woodmen v. Prater, 24 Okla. 214, 103 Pac. 558, 23 L. R. A. (N. S.) 917, 20 Ann. Cas. 287."

The same doctrine is supported by decisions from other jurisdictions. Modern Woodmen of America v. Owens (Tex. Civ. App.) 130 S. W. 858; The Homesteaders v. Briggs (Tex. Civ. App.) 166 S. W. 95; Supreme Lodge v. Payne, 101 Tex. 449, 108 S. W. 1160, 15 L. R. A. (N. S.) 1277; Kemp v. Good Templars Mutual Benefit Association, 19 N. Y. Supp. 435, 135 N. Y. 658, 32 N. E. 648.

In Supreme Lodge K. P. v. Bradley (Ky.) 132 S. W. 547, the Kentucky court said:

"*** The appellant, of course, did not know the applicant personally, and hence demanded of him certain information, in order that it might determine whether or not he was a desirable insurable risk. This information he volunteered to give, and vouched for its accuracy and truth, and the company had a right to rely upon its correctness. If it did so, and issued the policy on the faith thereof, then, clearly no recovery should be allowed if this information in vital and material respects was false.

The statement that he had not been treated by any physician during the 5 years next before the date of the application was certainly known to him to be false, for he had consulted no less than five different physicians during the 14 months before that date, and he had been told by at least one of them that he had pulmonary trouble or tubercles of the bronchial tubes, and that he must go to a different climate if he hoped to recover. He was likewise being treated for an inflammation of the bladder, or cystitis, and, judging from the number of physicians whom he consulted, it must have been of an aggravated nature; and although he stated that his health was good when the application was signed, the evidence discloses that he consulted a physician about this bladder trouble upon the day following that upon which the application was made. So, too, he knew that his sister had just recently died of tuberculosis. All of this information he not only withheld from the company, but so answered the questions as to preclude any investigation along that line, and led the company to believe that he was a 'good risk,' as the medical examiner reported him to be."

"Just how this physician could have reached this conclusion, if, in fact, he made any examination at all, we confess it is difficult to see. Certainly his examination must have been of the most cursory character, if, indeed, it was not made with a view of passing the applicant. However that may be, his mistake could afford no excuse for the false statements by the applicant as to the condition of his health at that time, and during the five years prior thereto, and as to his family history. For the correctness of the answers to these questions he alone was responsible, and, though the physician to whom he made them failed to discern the presence of any ailment which might affect the risk, still the company was entitled to the truth in regard to the questions asked in order that it might, from such information and the medical examination, and any other facts at its command, determine whether or not it desired to take the risk. There can be no doubt that he would have been declined if the company had known that he had just lost a sister with consumption and that he himself for some time had been treated by different physicians for tuberculosis and cystitis. The evidence upon this point is conclusive. No reputable company would insure a subject with such a personal and family history."

"This being true, it is apparent that each of the answers to these several questions was not only material, but of vital importance in the execution of the contract. If answered correctly, the contract would not have been entered into; and, as they were answered falsely, the contract based thereon should not be upheld, for to permit a recovery under such a state of facts would

be to put a premium upon fraud and ratify and approve its perpetration. Alden v. Supreme Tent Knights of Maccabees of the World. 178 N. Y. 545, 71 N. E. 104."

In Crosse v. Supreme Lodge Knights & Ladies of Honor, 254 Ill. 80, 98 N. E. 261, the Illinois court held:

"Parties competent to contract are at liberty to enter into such agreements with each other as they see fit, and it is the purpose of the law and the function of the courts to enforce their contracts. Accordingly, the rule established in this state is that where an application for life insurance is expressly declared to be a part of the policy, and the statements therein contained are warranted to be true, such statements will be deemed material whether they are so or not, and if shown to be false there can be no recovery on the policy, however innocently the statements may have been made."

To like effect are the following cases: National Amity Ass'n v. Carter (Ark.) 132 S. W. 633; Rasicot v. Royal Neighbors of America (Idaho) 108 Pac. 1048, 29 L. R. A. (N. S.) 433; Sovereign Camp W. O. W. v. Lillard (Tex. Civ. App.) 174 S. W. 619; Kribs v. United Order of Foresters, 191 Mo. App. 524, 177 S. W. 766; Finch v. Modern Woodmen of America, 113 Mich. 646, 71 N. W. 1104; Jefferson v. Supreme Tent of Knights of Maccabees, 152 Ill. App. 242.

In Supreme Lodge Knights & Ladies of Honor v. Payne, 101 Tex. 449, 108 S. W. 1160, the Texas court said:

"* * * The declaration of Mrs. Payne at the bottom of the medical examiner's report that the answers recorded were the same that she gave, is entitled to much weight, for it put Mrs. Payne on notice that reliance was placed upon her for their truth. Doubtless that declaration was required in order to secure the personal supervision of the answers by the applicant, and to avoid this class of defenses. It is a reasonable and proper requirement. The terms of the contract are more forcible than any argument that could be made in the application of the law to this case. There is no evidence which tends to show any fraud on the part of the medical examiner; nor anything which would indicate that there was any undue influence or improper methods used to secure the answers given. Dr. Erwin and Mrs. Payne were both deceived as to her condition; therefore the warranty must be enforced. * * *

"To the fourth question we answer that the court should have instructed the jury to return a verdict in favor of the defendant. The certificate provides that the answers in the application and the medical examiner's report are made a part of the certificate whereby Mrs. Payne warranted the answer made to the question whether or not she was at the time pregnant' to be true; that is, she warranted that she was not at that time pregnant, and that the answer as recorded by the medical examiner was the answer she gave to the question. The fact warranted being untrue, rendered the certificate void. Insurance Co. v. Pinson, 94 Tex. 555, 63 S. W. 531. In the case cited the court said 'The statements and agreements contained in the application are expressly made a part of the policy and must be given the same force as if written into the policy itself. Goddard v. Insurance Co. 67 Tex. 71, 1 S. W. 906, 60 Am. Rep. 1'."

In Satterlee v. Modern Brotherhood of America. 15 N. D. 92, 106 N. W. 561, the North Dakota court said:

"* * * This medical examination was had on March 12, 1904. The application was accepted, and the beneficiary certificate issued on March 19, 1904. Said Myrtle Satterlee died September 12, 1904, after giving birth to a child on that day, which child was living at the time of the trial in May, 1905. The cause of her death was puerperal eclampsia, a disease caused by childbirth. The insured had been married about five years to the plaintiff, and they had always lived together as husband and wife ever since their marriage." * * *

"* * * The applicant in this case warranted that she was not pregnant. That this warranty was untrue cannot be seriously questioned. That a state of pregnancy materially increased the risk of loss is obvious. It was a material fact which increased the risk of loss; and the warranty with respect to it was untrue, however innocent the applicant may have been of any intentional misrepresentation. The warranty being false, the contract was vitiated; and it follows that the defendant's motion for a directed verdict ought to have been granted. As there is no ground for supposing that a new trial would disclose any different state of facts, a judgment dismissing the action should be entered. notwithstanding the verdict."

In Sovereign Camp W. O. W. v. Harmon (Tex. Civ. App.) 246 S. W. 704, the applicant for the insurance made his answer that he did not have and had not had tuberculosis, and that certain of his relatives did not die of that disease, a warranty of the truthfulness thereof. It was shown upon the trial of the cause that the answers made were false. The Texas court said:

"The representations made by deceased, William K. Harmon, in his application, were undoubtedly untrue and were of the most material nature, if it were necessary for them to be material to invalidate the policy, which it is not, and a verdict should have been instructed for appellant. Modern Or-

der of Praetorians v. Davidson (Tex. Civ. App.) 203 S. W. 379; Sov. Camp. W. O. W. v. Treanor (Tex. Civ. App.) 217, S. W. 204; Modern Woodman v. Atcheson (Tex. Civ. App.) 291 S. W. 537."

There seem to be no distinguishing features about the warranties made by Mrs. Miller and the warranties made by the applicants for the insurance in the cases cited herein. From the authorities above quoted from and cited we conclude that the agreement made by Mrs. Miller, that her answers were warranties of their truthfulness, should be upheld. As to whether Mrs. Miller was pregnant at the time of making the application was a question which occasioned the defendant great concern, as well it might. as was later proved by her death from the effects of the existing pregnancy. In some of the cases cited it is intimated, or even said, that the materiality of the questions and answers involved was not a matter of consequence, when the answers are made warranties. However that may be, there is no question of the materiality of the question asked and the answer given here under consideration. We think, in this case, that the defendant was entitled to have the questions propounded answered truthfully; and when that was not done, as is perfectly apparent, the untruthful answers had the effect of destroying the right of recovery on the contract.

We have heretofore found that Mrs. Miller expressly waived any benefits arising out of the contract of insurance in case of disability or death resulting from existing pregnancy. And, it is contended by the defendant that such waiver has the effect of excepting death or disability from existing pregnancy from the contract. By the express terms of the contract the defendant exempted itself from all liability for disability or death resulting from existing pregnancy; and by signing the application Mrs. Miller agreed to such condition.

In 25 Cyc. 874, the general rule is laid down as follows:

"There may be a valid stipulation in a policy of life insurance, wholly exempting the company from liability, or, as is sometimes the case, providing for payment of a reduced amount, where the death of the insured is due to certain excepted causes, such as death caused by smallpox or other specified diseases, death from the casualties or consequences of war, or death due to intemperance or the use of intoxicating liquors."

This seems to be a universally recognized rule. Under this rule it is competent for the parties to the insurance contract to contract and agree that there shall be no liability in case of disability or death resulting from certain specified causes. This is the condition presented here. The defendant did not desire to insure Mrs. Miller against disability or death resulting from existing pregnancy, or agree to pay her any benefits provided for, in case of disability or death resulting from existing pregnancy. Mrs. Miller agreed that she was not to be insured against disability or death resulting from existing pregnancy. This was the effect of her waiver. It can have no other meaning. If Mrs. Miller had answered that she was, at the time, pregnant, still the defendant might have issued a benefit certificate, and it would have had the effect of insuring her against disability or death resulting from all other causes except that growing directly or indirectly from her condition of pregnancy.

A similar contract was upheld in Melton v. Royal Highlanders (Iowa) 189 N. W. 787. In the insurance contract there under consideration the excepted risk was injuries growing out of the occupation of fireman.

. In Ridgeway v. Modern Woodman of America, 98 Kan. 240, 157 Pac. 1191, L. R. A. 1917 A, 1062, injuries growing out of certain hazardous occupation were excepted; and it was held that acceptance of dues was not a waiver.

In Diseker v. Equitable Life Assur. Society, 87 S. C. 187, 69 S. E. 152, injuries growing out of switching and coupling cars was excepted. The exception was upheld.

In Scherar v. Prudential Insurance Co., 63 Neb. 530, 88 N. W. 687, 56 L. R. A. 611, death from suicide, sane or insane, was excepted. The court said:

"It is the duty of the court to ascertain from the contract, if possible, what the parties meant by it, and. when so ascertained, to give the effect to it. * * * The insurer evidently was unwilling to incur the perils of insanity, and the clause exempting it from liability was inserted to protect it against that hazard."

The exception was upheld.

In Bolser v. Modern Woodman of America (Neb.) 160 N. W. 966, the exception was from death resulting from a duel, or from violation or attempted violation of the law. Such death was pleaded in defense. The court said:

"That the defense pleaded by defendant. under the terms of its benefit certificate. is a valid defense, and that, under the evidence

it should have been sustained * * *"—citing many cases.

In Red Men's Fraternal Acci. Asso. v. Rippey (Ind.) 103 N. E. 345, 50 L. R. A. (N. S.) 1006, the excepted cause of disability, or death was such as might be contributed to or caused by rheumatism, lumbago, sciatica, or tuberculosis which shall exist or commence within a year from the date of the certificate. The exception was pleaded as a defense. The court said:

"It can scarcely be doubted that there may be a valid stipulation in a policy of life insurance wholly exempting the insurer from liability in case of death from some specified disease or cause. and it follows that a certificate or policy of insurance may provide that there shall be no liability on the part of the insurer if the insured die within a year from some cause or disease excepted from, the general provisions of the contract to insure against death. 25 Cyc. p. 874, and cases there cited; Bacon, Ben. Soc. (3d Ed.) par. 320; Beach Ins. par. 912; Knights & Ladies C. I. O. v. Shoaf, 1906, 166 Ind. 367, 77 N. E. 738."

"In such case the insurance is of a limited nature until after the expiration of the times named, and there is no insurance against death from the excepted disease or cause within the time specified. Death from the excepted cause within the time fixed by the certificate is a matter of defense, and need not be negatived or anticipated by the complaint; the burden resting on the insurer to allege by answer and to prove by a preponderance of the evidence the fact of death from the excepted cause within the time named. When alleged and proved, the defense is complete. Joyce Ins. par. 3684; Coburn v. Travelers' Ins. Co. (1887) 145 Mass. 226 230, 13 N. E. 604. See cases collected in note to Starr v. Aetna L. Ins. Co. (1905) 4 L. R. A. (N. S.) 636. Such a provision is similar to a provision against liability in case of death from suicide. The rule just stated has been frequently applied to such cases. Modern Woodmen v. Craiger (1910) 175 Ind. 30, 92 N. E. 113, 93 N. E. 209; Modern Woodman v. Kincheloe (1911) 175 Ind. 563, 94 N. E. 228, Ann. Cas. 1913C, 1259; Hodson v. Great Camp K. M. M. (1911) 47 Ind. App. 113, 93 N. E. 861."

The exception was upheld.

In Bankers Union of the World v. Mixon, 74 Neb. 36, 103 N. W. 1049, the exception was from disability resulting from smallpox. The court said:

"The defendant insists that the death of the insured resulted from smallpox, and that, by reason of the foregoing waiver, this loss was not insured against. The suggestion of the plaintiff that this waiver was not binding upon the beneficiary is without foundation, since it waives benefits in case of death, and such benefits could accrue to no one except the beneficiary under the certificate. It is also suggested by the plaintiff that fraternal beneficiary companies cannot contract for such waivers of liability. No reason is given upon which to base such a suggestion, and we are not aware of any. The right of the parties to so limit their contracts was recognized in Sovereign Camp Woodmen of the World v. Woodruff, 80 Miss. 546, 32 So. 4."

The exception was upheld.

In Gallop v. Royal Neighbors of America (Mo. App.) 150 S. W. 1118, the exception was disability or death resulting from pregnancy existing at the time of the delivery of the contract . The court said:

"Parties to a contract of insurance have undoubted right to agree on the terms of their contract and to declare when and under what conditions the contract shall go into effect. Misslhorn v. Life Ass'n, 30 Mo. App. loc. cit. 600. As is well said in the case of M. W. A. v. Owens (Tex.) 130 S. W. loc. cit. 862; 'It is true that a binding contract of insurance may be made by the making and acceptance of a proposition without the issuance of a policy, the policy not being the contract but only the written statement thereof'; but it is also true that 'the competency of the parties to expressly stipulate when it (the insurance contract) shall become operative cannot be questioned.' And where the parties agree in the application that the contract of indemnity shall not take effect until the delivery of the policy at a certain time and under certain specified conditions, such agreement will be enforced, if it is one the parties lawfully could make. Thus, in the case from which we have just quoted, a provision that the member must be in good health at the time of the delivery of the certificate was held valid, and the company was held not liable, since the proof showed that the member was ill of typhoid fever at that time."

"We think the stipulation in the by-law that the liability of defendant should not attach until the manual delivery of the certificate while the member—a married woman—was not pregnant, was a lawful agreement the parties were entitled to make. The writer thinks that a stipulation forbidding pregnancy during the life of the contract on pain of forfeiture would have been contra bonos mores and nonenforceable, but unquestionably defendant had a right, as an insurer, to select its risks and to declare that it would not issue a policy to a married woman during pregnancy."

"The physical state the contract was intended to have existent at the time it became effective as a contract of indemnity was in the nature of a condition precedent. * * * And, since that condition had failed before the delivery of the certificate, it must

follow that the contract at no time came into being."

The exception was upheld.

In Knights and Ladies of Columbia v. Shoaf, 166 Ind. 367, 77 N. E. 738, pregnancy was admitted in the contract and a waiver made. The waiver was upheld. The court said:

"* * * The application, waiver and certificate, as pleaded in the answer, taken together, constituted the contract. Construing these writings together it is manifest that Mrs. Shoaf was not insured against death arising from her existing pregnancy."

To like effect is Stenger v. Modern Brotherhood of America, 24 S. D. 371. 123 N. W. 842.

In Curtis v. Modern Woodmen of America, 159 Wis. 303, 150 N. W. 417, the exception was from death from the intemperate use of intoxicating liquors. The exception was upheld.

In Modern Woodmen of America v. Weekley, 42 Okla. 25, 139 Pac. 1138, the exception was from death resulting from certain enumerated hazardous occupations. The court said:

"A condition in a fraternal certificate that "if the above-named member shall, at any time after the issuance of this certificate, enter upon any of the hazardous occupations named in sections 15, 16 or 18 of the by-laws of this society, as the same now exist or may be hereafter modified, amended or enacted, the entering upon said employment shall limit or extinguish the liability of this society upon this certificate in accordance with the by-laws of the society' is a reasonable and binding provision. And where the by-laws enumerate, among the hazardous occupations, 'Linemen in the employment of electric car company, or power or electric light company' and further provide that the effect of entering upon such hazardous occupation 'shall totally exempt said society from any and all liability of such member, his beneficiary or beneficiaries on account of the death of such member, directly traceable to employment in such hazardous occupation,' held, the certificate is not rendered void by the member entering upon such hazardous occupation, but the society is exempt from liability on account of death of the member by accident or disease directly traceable to such hazardous employment; the certificate remaining in full force and effect; and the association's liability continuing if death results from any other cause."

We are inclined to the view, that under the authorities here cited, it was competent for the parties to make an insurance contract excepting the insurer from liability for either disability or death resulting directly or indirectly from existing pregnancy; and as to such risk there was in fact no insurance contract made, and there being no contract of insurance covering the excepted risk, a recovery cannot be upheld.

The contention is made by the plaintiff that the doctor in making the examination of Mrs. Miller must of necessity have found out that her negative answer to the question as to whether she was pregnant was untrue, and that such knowledge on his part was knowledge to the defendant; and the effect of the untruthful negative answer was waived by the issuance and delivery of the policy. But, the view we take of her waiver of all benefits provided for in case of disability or death resulting from existing pregnancy renders a discussion of this contention unnecessary. If it had been shown with certainty that the defendant knew of her condition or that she had answered truthfully and the policy had been issued and delivered as was done, still it would not have constituted a contract of insurance against the excepted risk.

The view we take of this case necessitates a reversal of the judgment; and it is apparent from the record here presented and the defense made by the defendant that the right of recovery cannot be maintained. We find, as a matter of law, that the plaintiff is not entitled to recover upon the insurance contract relied upon.

We therefore recommend that the judgment of the trial court be reversed and remanded to the district court of Tulsa county with a direction to dismiss the plaintiff's petition.

By the Court: It is so ordered.